PEOPLE v LYLES

PEOPLE v POTTS

Docket Nos. 77-1046, 77-1072. Submitted June 5, 1980, at Detroit.—
    Decided September 16, 1980.

   Willie Lyles and Lamar N. Potts, while incarcerated in Ohio,
   were charged with felony murder and first-degree premeditated
   murder committed earlier in Michigan. A warrant was filed
   with the prison in Ohio as a detainer, and defendants were
   returned to Michigan and were convicted of second-degree
   murder of two men, Recorder's Court of Detroit, Thomas L.
   Poindexter, J. They both appeal, alleging that the magistrate
   who conducted their arraignment abused his discretion in
   binding them over for trial on the charge of first-degree murder
   since there was no testimony to establish premeditation or
   deliberation, that the trial court had no jurisdiction over them
   since the period of time which elapsed between their return to
   Michigan and their trial was longer than the time limitation
   provided for by the Interstate Agreement on Detainers Act, and
   that the trial court erred in denying their motion to suppress
   identification testimony and in allowing their in-court identifi-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 772.
   21 Am Jur 2d, Criminal Law § 443.
[2, 3, 4] 40 Am Jur 2d, Homicide § 52.
[5] 40 Am Jur 2d, Homicide § 47 et seq.
[6] 40 Am Jur 2d, Homicide § 45 et seq.
[7] 21 Am Jur 2d, Criminal Law § 252.
[8] 21 Am Jur 2d, Criminal Law § 313.
   Accused's right to assistance of counsel at or prior to arraignment.
      5 ALR3d 1269.
[9, 10] 21 Am Jur 2d, Criminal Law § 368.
   Admissibility of evidence of lineup identification as affected by
      allegedly suggestive lineup procedure. 39 ALR3d 487.
   Admissibility of evidence of showup identification as affected by
      allegedly suggestive showup procedures. 39 ALR3d 791.
[11, 13] 5 Am Jur 2d, Appeal and Error § 776.
[12] 30 Am Jur 2d, Evidence § 1143.

cation without establishing that there was an independent basis apart from a pretrial lineup. The cases were consolidated for appeal by the Court of Appeals. *Held:*

1. The magistrate did not abuse his discretion. Sufficient evidence was presented from which the requisite premeditation and deliberation to support a charge of first-degree murder could be found. The magistrate was not required to establish guilt beyond a reasonable doubt, but only to determine that the charged offense was committed and that there was probable cause to believe that defendants were guilty.

2. All but 118 days of the time elapsed between defendants' return to Michigan and their trial was occasioned by defense counsel's requests for delays and adjournments and, thus, does not constitute a violation of the provisions of the Interstate Agreement on Detainers Act.

3. The witness who made an in-court identification of the defendants had failed to identify anyone during a pretrial lineup, and, thus, the in-court identification was not tainted by the lineup. However, his identification of the defendants at the preliminary examination was impermissibly suggestive and, thus, his in-court identification should have been excluded on those grounds. But any error was harmless beyond a reasonable doubt, and remand is not required since there was strong circumstantial evidence linking the defendants to the crime, and it is unlikely that the verdict would have been affected by the deletion of the identification testimony.

Affirmed.

1. CRIMINAL LAW — PRELIMINARY EXAMINATION — PROBABLE CAUSE — DUTY OF MAGISTRATE — STANDARD OF REVIEW.

A magistrate need not establish a defendant's guilt beyond a reasonable doubt in deciding at a preliminary examination whether the defendant should be bound over for trial; it is sufficient if the magistrate determines that the charged offense was committed and that there was probable cause to believe that the defendant was guilty, and, upon review, his decision will be overturned only where an abuse of discretion is found.

2. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION AND DELIBERATION — WORDS AND PHRASES.

Premeditation and deliberation must be given independent meaning in a prosecution for first-degree murder; to premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem.

3. CRIMINAL LAW — PREMEDITATION AND DELIBERATION — NECESSARY INTERVAL BETWEEN THOUGHT AND ACTION — REASONABLE MAN.

Premeditation and deliberation characterize a thought process undisturbed by hot blood; while the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a second look.

4. HOMICIDE — PREMEDITATION AND DELIBERATION — EVIDENCE — PERMISSIBLE INFERENCES.

Premeditation and deliberation on the part of a defendant charged with first-degree murder may be inferred from a prior relationship between the parties involved, indicating a motive, the use of a weapon which was acquired in preparation for a homicide, circumstances and events preceding a killing, and a defendant's subsequent conduct which suggests a scheme or plan.

5. HOMICIDE — PREMEDITATION AND DELIBERATION — WEAPONS — SUFFICIENCY OF EVIDENCE.

The use of a deadly weapon in the killing of another is insufficient to establish premeditation and deliberation unless there is evidence that the weapon was acquired or positioned with thought beforehand of using it to kill the victim.

6. HOMICIDE — FIRST-DEGREE MURDER — NECESSITY OF PREMEDITATION.

A trier of fact may not consider a charge of first-degree premeditated murder where it is factually clear that there is no evidence of premeditation.

7. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS ACT — DELAY IN PROCEEDING TO TRIAL — JURISDICTION.

A trial court retained jurisdiction over a defendant who was brought into Michigan for trial pursuant to the Interstate Agreement on Detainers Act where all but 118 days of the delay in proceeding to trial were occasioned by requests by defense counsel for delays and adjournments.

8. CRIMINAL LAW — PRETRIAL IDENTIFICATION PROCEDURES — ENTITLEMENT TO COUNSEL.

A defendant is entitled to counsel at pretrial identification procedures.

9. CRIMINAL LAW — PRETRIAL IDENTIFICATION PROCEDURES — DUE PROCESS.

Pretrial identification procedures which are unnecessarily suggestive or are conducive to irreparable misidentification deny due process.

10. CRIMINAL LAW — EVIDENCE — IN-COURT IDENTIFICATION PROCEDURES — FOUNDATION.

A trial court should hold an evidentiary hearing out of the presence of a jury at which the prosecution must show by clear and convincing evidence that an in-court identification had a basis independent of a prior identification procedure where no defense counsel was present at the pretrial identification or where the identification procedures were unnecessarily suggestive or conducive to irreparable misidentification before an in-court identification may be received in evidence.

11. CRIMINAL LAW — IN-COURT IDENTIFICATION — IMPROPER PRETRIAL IDENTIFICATION — STANDARD OF REVIEW.

A reviewing court, which finds that an in-court identification was received in evidence following a pretrial identification conducted without the presence of defense counsel or following pretrial identification procedures which were unnecessarily suggestive or conducive to irreparable misidentification, should reverse a conviction and order a new trial unless it is able to declare beyond a reasonable doubt that the in-court identification did not affect the verdict, and if a record is not complete and a determination cannot be made, the court should vacate the conviction and remand the case to the trial court for a hearing on the issue.

12. CRIMINAL LAW — PRELIMINARY EXAMINATION IDENTIFICATION — SUGGESTIVENESS — IN-COURT IDENTIFICATION — INDEPENDENT BASIS.

The factors to be examined on the issue of whether a preliminary examination identification was impermissibly suggestive are the length of time between the criminal act and the confrontation with the witness and the length of time during which a witness observed a defendant during the criminal act in light of the totality of the circumstances, and a subsequent in-court identification should not be admitted unless there is a finding that a sufficient independent basis for the identification exists.

13. CRIMINAL LAW — IN-COURT IDENTIFICATION — STANDARD OF REVIEW — HARMLESS ERROR.

A remand by a reviewing court for an evidentiary hearing on the issue of the existence of an independent basis of an in-court

identification which was preceded by an impermissibly suggestive preliminary examination identification is not required where any error is found to have been harmless beyond a reasonable doubt due to the presence of strong circumstantial evidence linking a defendant to a crime and rendering it unlikely that a verdict would be affected by deletion of the identification testimony.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Robert J. Sheiko,* Assistant Prosecuting Attorney, for the people.

*John J. Schutza,* for defendant Lyles.

*Catherine Gofrank,* for defendant Potts.

Before: R. M. MAHER, P.J., and BRONSON and T. C. QUINN,* JJ.

PER CURIAM. On August 5, 1975, the defendants were charged with four counts of murder for the shooting deaths of two men. The information charged the defendants with two counts each of felony murder and first-degree premeditated murder, MCL 750.316; MSA 28.548. Since the defendants were incarcerated in Ohio at the time, a warrant was filed with the Ohio prison as a detainer. The defendants were returned to Michigan on January 8, 1976, where they were arraigned. On January 22, 1976, the magistrate dismissed the two felony-murder counts and bound the defendants over for trial on the charge of first-degree premeditated murder. The defendants were convicted by a Recorder's Court jury of the second-degree murder of two men. The defendants were

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

sentenced to a term of life imprisonment for one murder and an additional term of 50 to 75 years for the second murder. Both defendants appeal from their convictions as a matter of right. Their cases have been consolidated on appeal.

In order to properly resolve this appeal, we must delve at some length into its somewhat complex factual background.

Sidney Kinnard testified at the trial that he was employed at Pete and Doll's Party Store on October 19, 1973. At approximately 8:20 p.m., two men entered the store and stood in the back whispering to each other. One man went to the beer cooler and brought a can of beer to the counter. The other man got a bottle of red pop and also brought it to the counter. Andrew Harris, the manager, rang up the purchases and remarked, "Ninety-eight cents to you and everybody else I charge more". The man with the beer said, "yeah, sure", and pulled out a gun. The manager and Kinnard ducked down to the floor as a shot was fired. There were two or three more shots. The manager attempted to reach for the gun he wore at his side. At that time, the man with the beer leaned over the counter and shot Mr. Harris. Kinnard heard three or four more shots. When he got up from the floor, he saw that Mr. Harris and Mr. Ellis, a customer, were lying on the floor. The two men who had come in together were gone. No money or other object was taken from the store during the incident. Harris was found lying on his gun. A third gun which had been kept underneath the counter was recovered at the scene.

Mr. Kinnard had attended a lineup on January 8, 1976, in which both defendants were present, but failed to identify anyone. In court, Kinnard identified Lamar Potts as the man with the beer

who pulled out the gun and identified Willie Lyles as the man with the pop.

The autopsy report revealed that Harris died as the result of a gunshot wound to the top of his head from a .38-caliber pistol. Mr. Ellis died from a gunshot wound which entered at the left side of his head, just behind his left ear. The gun, also a .38-caliber, was fired at close range, approximately one inch from Ellis' skull.

Iris Clay was in the party store a few minutes before the shooting. While inside, she saw two men talking to each other near the beer cooler. As she left the store, she heard shots fired and ran across the street. She observed two men running out of the store and identified Potts as the shorter man. She said that the taller man was firing a gun as he stood at the door. She also testified that she had identified Potts at a lineup. Alonzo Richards was another customer who was inside the store when the shooting started. Earlier he had observed two men standing by the beer cooler. When the shooting began, Richards ran outside and across the street. Later he saw two men running out of the store and going around the corner into a small, dark-colored car. Richards saw a gun lying on the sidewalk on the escape route taken by the two men and also saw a pair of shoes. He pointed out these objects to the police. Richards was not asked to identify the defendants.

Oscar Johnson had accompanied Iris Clay to the party store that night. He observed two men whispering in the rear area of the store. He left the store when the shooting started and saw three men run out of the store. The first was a customer. The second man ran toward the alley to a waiting car. The third man came out, stumbled, and dropped a gun. He also lost his shoes and then

proceeded into the green Pinto that the second man had entered. Someone had been sitting in the car which then sped away. Mr. Johnson returned to the store and saw the first man, who had run out, whom he identified as Alonzo Richards. Johnson gave the police a description of the men, but was not asked to identify the defendants at a lineup.

Three guns were found at the scene of the shootings. Three shots were fired by the pistol in Mr. Harris' hand. No shots were fired from the pistol kept under the counter. Both of these were nine millimeter pistols. The .38-caliber slugs which were removed from the bodies of Harris and Ellis did *not* come from the .38-caliber revolver which had been dropped by one of the perpetrators outside the store. It was determined that both shots were fired from the same weapon which was never recovered. The can of beer and bottle of pop which had been left on the counter were tested for fingerprints. The print taken from the beer can was positively identified as belonging to Potts. The print taken from the pop bottle was positively identified as belonging to Lyles. The prints on the .38-caliber pistol dropped in front of the store were smudged and not usable for purposes of comparison.

The parties all stipulated for the admission into evidence of a police report taken by a Cleveland, Ohio police officer at 11:55 p.m. on October 19, 1973. This report involved a complaint filed by the defendant Potts, wherein he stated that he had been the victim of an armed robbery in Cleveland at 9:20 p.m. During the alleged robbery, Potts had received a gunshot wound to the upper right arm, lodging in his chest. He alleged further that the unknown robbers had stolen his shoes. The parties

stipulated to the fact that the distance between Cleveland and Detroit is 170 miles. The defendants rested without testifying or presenting any witnesses in defense.

On appeal, both defendants contend that the magistrate abused his discretion in binding them over for trial on the charge of first-degree murder where there was no testimony to establish premeditation or deliberation. Lyles contends that there was no evidence to link him to the murders, since no one saw him with a gun, nor was there any other evidence of his participation or assistance in the killings.

In deciding whether a defendant should be bound over for trial, a magistrate need not establish his guilt beyond a reasonable doubt. It is sufficient if the magistrate determines that the charged offense was committed and that there was probable cause to believe that defendant was guilty. *People v Doss,* 406 Mich 90, 100-101; 276 NW2d 9 (1979). A reviewing court will overturn the magistrate's decision to bind over only upon a finding of an abuse of discretion. *Doss, supra, Wayne County Prosecutor v Recorder's Court Judge,* 92 Mich App 119; 284 NW2d 507 (1979).

Premeditation and deliberation were defined in *People v Morrin,* 31 Mich App 301, 329-330; 187 NW2d 434 (1971), as follows:

"Accordingly, it underscores the difference between the statutory degrees of murder to emphasize that premeditation and deliberation must be given independent meaning in a prosecution for first-degree murder. The ordinary meaning of the terms will suffice. To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought

process undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look'." (Footnotes omitted.)

The Court enumerated the types of evidence from which premeditation and deliberation could be inferred: a prior relationship of the parties indicating a motive, the use of a weapon which was acquired in preparation for a homicide, circumstances and events preceding the killing, and the defendant's subsequent conduct to suggest a scheme or plan. The Court indicated that the use of a deadly weapon was not in itself sufficient unless there was evidence that it was acquired or positioned with the thought beforehand of using it to kill the victim. See also, *People v Meadows,* 80 Mich App 680, 691-692; 263 NW2d 903 (1977), *People v Griner,* 30 Mich App 612; 186 NW2d 800 (1971). In *People v Berthiaume,* 59 Mich App 451, 456; 229 NW2d 497 (1975), the Court made the following statement about premeditation in first-degree murder:

"Emerging from these cases is a reaffirmation of the following well established principles:

" '(1) Premeditation can be reasonably inferred from the circumstances surrounding the killing;

" '(2) a defendant may not be found guilty of first-degree murder if he did not have an opportunity to subject the nature of his response to a second look or reflection, *i.e.,* one cannot instantaneously premeditate a murder;

" '(3) a sufficient time lapse to provide an opportunity for a 'second look' may be merely seconds, or minutes, or hours, or more, dependent on the totality of the circumstances surrounding the killing;

" '(4) where it is factually clear that there is *no*

evidence of premeditation the trier of fact may not consider a charge of first degree murder.' *People v Meier,* 47 Mich App 179, 191-192; 209 NW2d 311 (1973)." (Emphasis in original.)

See also, *People v Jesse Smith,* 81 Mich App 190, 199-200; 265 NW2d 77 (1978).

We find that there was sufficient evidence presented from which we can infer the requisite premeditation and deliberation. The killer of Harris, the store manager, entered the store armed with a weapon, began shooting shortly thereafter with no provocation, and had to bend over the counter in order to fire the fatal shot. This indicates that he entered with the intention of shooting and had the opportunity for a "second look". The customer, Ellis, was shot from behind his head at a distance of only an inch or two. This indicates that Ellis was not the victim of an accident or a cross fire, but rather denotes a deliberate execution. The perpetrators fled into a waiting car, which also implies there was a design or plan rather than a spur of the moment attack.

We also find sufficient evidence of involvement on the part of Lyles to support binding him over on the charged offense. Lyles came into the store with Potts. They stood in the back whispering together moments before the shooting began. Potts dropped his weapon, which was not the murder weapon, leading to the reasonable inference that Lyles had the murder weapon in his possession. Furthermore, Potts was apparently leaning over the counter while Lyles was standing slightly behind. Ellis was standing at the counter and was shot from behind, but at close range. Thus, it can reasonably be inferred that Lyles was the one who shot Ellis. Lyles and Potts ran out of the store together and entered the same car which had been

waiting in the alley. We find that Lyles was either the principal or at least an aider and abettor and was properly bound over for trial.

The defendants allege further that the trial court had no jurisdiction over them because a period of 327 days elapsed between their return to Michigan from the Ohio State Reformatory and their trial in violation of the 120-day requirement of the Interstate Agreement on Detainers Act, MCL 780.601; MSA 4.147(1).

Article IV(c) of the act provides as follows:

"In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

In the event of noncompliance with this provision, Article V(c) of the act requires the appropriate court to dismiss the information with prejudice.

A review of the instant record indicates that all but 118 days of the delay between January 8, 1976, when defendants were brought into Michigan, and the trial date of November 30, 1976, were occasioned by defense counsel's requests for delays and adjournments. These delays cannot be attributed to the prosecution. *People v Cook,* 95 Mich App 645; 291 NW2d 152 (1980), *Stroble v Anderson,* 587 F2d 830, 838-840 (CA 6, 1978), *cert den* 440 US 940; 99 S Ct 1289; 59 L Ed 2d 449 (1979). This issue is, therfore, without merit.

The defendants also allege that the trial court erred reversibly in denying defendants' motion to suppress Mr. Kinnard's testimony and in allowing him to identify the defendants in court where

there was no proof that his in-court identification had an independent basis from the pretrial lineup at which the witness had failed to identify anyone.

In *People v Anderson,* 389 Mich 155, 168-169; 205 NW2d 461 (1973), the Supreme Court established the following guidelines for identification procedures:

"1. Defendant is entitled to counsel at pretrial identified procedures *(Wade). [United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967)].

"2. Unnecessarily suggestive and conducive to irreparable misidentification procedures deny due process *(Stovall). [Stovall v Denno,* 388 US 293; 87 S Ct 1967; 18 L Ed 2d 1199 (1967)].

"3. If there was no counsel at the pretrial identification or if the procedures were unnecessarily suggestive or conducive to irreparable misidentification, then before an *in-court* identification may be received in evidence, the trial court must hold an evidentiary hearing out of the presence of the jury at which the people must show by clear and convincing evidence that the in-court identification had a basis independent of the prior identification procedure *(Wade).*

"4. Direct testimonial evidence relating to the pretrial out-of-court identification is per se excluded *(Gilbert). [Gilbert v California,* 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967)].

"5. On appeal, if the Court finds that the evidence was erroneously admitted under the above standards, the Court must reverse the conviction and order a new trial unless it is able to declare beyond a reasonable doubt that the in-court identification did not affect the verdict.

"6. If the record is not complete and a determination either way cannot be made, the Court should vacate the conviction and remand to the trial court for a hearing on the issue. (Footnotes omitted.)

In *People v Belenor,* 71 Mich App 10, 13; 246 NW2d 355 (1976), the Court considered a situation

where the witness was unable to identify anyone at a pretrial photographic identification, but did identify the defendant at the examination. This Court upheld the lower court's ruling that the photographic identification procedure had not been impermissibly suggestive and added the following pertinent observation:

"Most significantly, it does not require an abundance of common sense to realize that any possible 'suggestiveness' in the photographic display totally failed to register with the witnesses. The photographs were shown over two weeks *before* the corporeal lineup in which all four witnesses *failed* to identify defendant. The conclusion that this procedure was not unduly suggestive is compelling. A remand is thus unnecessary. *People v William Clark,* 68 Mich App 48; 241 NW2d 756 (1976)."

See also, *People v Manuel Johnson,* 58 Mich App 347, 351-352; 227 NW2d 337 (1975).

In the instant case, defendants' contention that the lineup tainted the witness's subsequent in-court identification is illogical, since the witness failed to identify anyone at the lineup. Hence, we conclude that any suggestiveness did not register with the witness.

Although not argued by the defendants, we must, *sua sponte,* consider whether there is a basis for finding error in the fact that Kinnard's identification of these defendants at the preliminary examination may have tainted his subsequent in-court identification.

In *People v Solomon,* 391 Mich 767; 214 NW2d 60 (1974), the Supreme Court adopted Chief Judge LESINSKI's dissenting opinion, 47 Mich App 208, 216-221; 209 NW2d 257 (1973), wherein he concluded that a preliminary examination is a pre-

trial confrontation which may be impermissibly suggestive. The factors which were to be examined on the issue of whether the preliminary examination identification was impermissibly suggestive were: (1) the time between the criminal act and the confrontation and (2) the length of time during which the witness observed the defendant during the offense. The Court must also examine the "totality of the circumstances" in each particular case. In *Solomon,* a police officer told the witness before the preliminary examination that they had the right man, 2-1/2 years had elapsed between the robbery and the confrontation, and the witness identified the defendant in the courtroom for the first time, after having seen defendant prior to the identification in the judge's chambers. Since identification of the defendant was a primary issue at the trial and two other witnesses had only seen defendant's face for a moment, this identification testimony was crucial to the outcome of the case. The matter was remanded to the trial court for a determination of whether the in-court identification had an independent basis. The rule in *Solomon* has been applied narrowly in subsequent cases. *Manuel Johnson, supra.*

In the instant case, Kinnard saw the defendants for only a brief period of time before the shooting started. The lineup took place a full two years later, at which time Kinnard was unable to identify anyone. At the preliminary examination, the defendants were sitting at the defense table when Kinnard positively identified them as the perpetrators. When questioned about his inability to identify them at the lineup, the witness answered that he did not remember their faces then and had been distracted by something else during the lineup. We would, therefore, find that, under the

*Solomon* criteria, the preliminary examination confrontation was impermissibly suggestive and that Kinnard's identification testimony should have been excluded unless there was a finding that the in-court identification had an independent basis under the criteria enumerated in *People v Kachar,* 400 Mich 78, 95-97; 252 NW2d 807 (1977). Ordinarily, we would remand the case for an evidentiary hearing.

However, in the instant case, we find that any error was harmless beyond a reasonable doubt and that a remand is not required. *People v Fournier,* 86 Mich App 768, 780; 273 NW2d 555 (1978). There was strong evidence linking defendants to the crime, albeit this evidence was circumstantial in nature. We deem it unlikely that the verdict would have been affected by deletion of Kinnard's identification testimony. Therefore, we decline to remand for an evidentiary hearing on the issue of an independent basis.

We have reviewed defendants' remaining allegations of error and find them to be without merit.

Affirmed.