PEOPLE v LEVERETTE

Docket No. 50523. Submitted June 4, 1981, at Detroit.—Decided
    January 5, 1982.

    Rickey Leverette was convicted of unarmed robbery and unlaw-
    fully driving away an automobile (UDAA), Detroit Recorder's
    Court, Evelyn K. Cooper, J. He appeals. *Held:*

        1. The defendant failed to object to the addition of the charge
    of armed robbery by the magistrate at the preliminary exami-
    nation in the trial court, precluding review on appeal, no
    unfair surprise to the defendant having been shown.

        2. The trial court erred in allowing the defendant to be
    convicted of both unarmed robbery and UDAA. UDAA is a
    lesser included offense of robbery where, as here, the object of
    the taking is an automobile and the defendant commits one
    criminal act and manifests one criminal intent. These separate
    convictions and punishments violate the defendant's right
    against being placed twice in jeopardy.

        3. The trial court erred in permitting the prosecutor's rebut-
    tal argument which appealed to the jurors' civic duty and fears

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 553.
    21 Am Jur 2d, Criminal Law § 420.
[2, 4] 21 Am Jur 2d, Criminal Law § 269.
[3] 67 Am Jur 2d, Robbery § 72.
[5-7] 75 Am Jur 2d, Trial §§ 225, 226.
    Prejudicial effect of prosecuting attorney's argument to jury that
        people of city, county, or community want or expect a conviction.
        85 ALR2d 1132.
[8, 9] 29 Am Jur 2d, Evidence §§ 371.4, 371.6.
    Admissibility of evidence of showup identification as affected by
        allegedly suggestive showup procedures. 39 ALR3d 791.
    Admissibility of evidence of lineup identification as affected by
        allegedly suggestive lineup procedures. 39 ALR3d 487.
[10] 5 Am Jur 2d, Appeal and Error §§ 778, 819.
[11] 75 Am Jur 2d, Trial § 293 *et seq.*
    Counsel's reference in criminal case to wealth, poverty, or financial
        status of defendant or victim as ground for mistrial, new trial, or
        reversal. 36 ALR3d 839.
[12] 75 Am Jur 2d, Trial § 882.

to stand over objection. The prosecutor's argument was not harmless relative to the robbery charge; however, because the defendant admitted driving away the automobile the argument can be deemed to have been harmless relative to the UDAA charge. Thus, the unarmed robbery conviction is vacated, and the UDAA conviction is affirmed, although the prosecutor may choose to retry the defendant for unarmed robbery.

4. The trial court erred in admitting the victim's in-court identification of the defendant because it was not shown that her previous confrontation with the defendant at the preliminary examination did not taint the subsequent in-court identification. The error was harmless, however, because the defendant admitted taking the automobile and substantial circumstantial evidence was presented implicating him as the thief.

5. The record reveals that certain of the prosecutor's questions to the defendant and his mother may have been improper; however, no manifest injustice resulted.

6. The trial court properly instructed the jury relative to the lesser included offense of unarmed robbery.

7. The record reveals that the prosecutor's closing argument was limited to the facts of the case and the fair inferences to be drawn therefrom, therefore, defendant's contention that the prosecutor argued facts not in evidence in his closing argument cannot be supported.

Affirmed in part, reversed in part, and remanded.

1. INDICTMENT AND INFORMATION — AMENDED COMPLAINTS — APPEAL.
   A magistrate at a preliminary examination may add a count not originally charged against a criminal defendant where no unfair surprise to the defendant results, and where an objection to the added count is not raised in the trial court review is precluded on appeal.

2. CRIMINAL LAW — DOUBLE JEOPARDY.
   The double jeopardy provisions of the United States and Michigan Constitutions require that a criminal defendant who is convicted of an offense may not be separately convicted of a lesser included offense arising from the same criminal act (US Const, Am V, Const 1963, art 1, § 15).

3. ROBBERY — LESSER INCLUDED OFFENSES — JURY INSTRUCTIONS.
   A trial court in a prosecution for robbery must instruct the jury, upon a request by the defendant, on the lesser cognate offense of unlawfully driving away an automobile where the alleged object of the taking is an automobile (MCL 750.413, 750.530; MSA 28.645, 28.798).

4. APPEAL — CRIMINAL LAW — LESSER INCLUDED OFFENSES — DOUBLE
   JEOPARDY.

   Generally, where a defendant is convicted of an offense and a
   lesser included offense arising out of the same criminal act, the
   remedy is to vacate the conviction on the lesser offense and
   affirm the conviction on the greater offense; however, where the
   prosecutor makes an improper appeal to the jurors' civic duty
   and fears, it is determined that the argument was not harmless
   in relation to the greater charge, evidence of the defendant's
   guilt relative to the greater charge is not overwhelming, and
   the defendant's admissions are such as to render the argument
   harmless relative to the lesser charge, the Court of Appeals
   will vacate the conviction on the greater charge and allow the
   conviction on the lesser charge to stand.

5. PROSECUTING ATTORNEYS — CIVIC DUTY ARGUMENTS.

   Prosecuting attorneys may not appeal to the jurors' civic duty
   because the argument injects issues into a trial which are
   broader than a particular defendant's guilt or innocence and
   encourages the jurors to return a conviction based on a societal
   obligation apart from the evidence adduced during trial.

6. PROSECUTING ATTORNEYS — CIVIC DUTY ARGUMENTS.

   Admission of civic duty arguments by a prosecuting attorney
   constitutes error, but the error may be harmless; however,
   where the error is so offensive to the maintenance of the
   judicial system that it can never be deemed harmless or where
   in a trial free of such error it is impossible to say that one juror
   would not have voted to acquit reversal is required on appeal.

7. PROSECUTING ATTORNEYS — CIVIC DUTY ARGUMENTS.

   The Court of Appeals, in reviewing the likely effect of a prosecut-
   ing attorney's civic duty argument on a verdict, should evalu-
   ate the improper statements in relation to the evidence ad-
   duced during trial; each case should be considered on its own
   facts, and an argument which is grounds for reversal in one
   case may be determined to be harmless in another.

8. WITNESSES — CRIMINAL LAW — IN-COURT IDENTIFICATION.

   A reviewing court in determining whether an independent basis
   for an in-court identification of a criminal defendant exists
   should consider the witness's prior relationship with or knowl-
   edge of the defendant, opportunity to observe the offense,
   previous proper identification of or failure to identify the
   defendant, identification of another person prior to a lineup or
   showup identification of the defendant, the length of time

between the offense and the identification, the accuracy or any discrepancies between a pre-lineup or showup description and the defendant's actual description, any idiosyncratic or special features of the defendant, the nature of the alleged offense, the age, intelligence, and physical and psychological state of the witness, and the witness's performance at the lineup or showup.

9. PROSECUTING ATTORNEYS — WITNESSES — IN-COURT IDENTIFICATIONS.

The prosecuting attorney bears the burden of showing by clear and convincing evidence that an unduly suggestive confrontation between a witness and a defendant did not taint the witness's subsequent in-court identification of the defendant.

10. APPEAL — CRIMINAL LAW — CONSTITUTIONAL LAW.

Violations of fundamental constitutional rights may amount to harmless error in the circumstances of a particular criminal case; the relevant inquiry on appeal is not merely whether but for the error one juror might have voted to acquit, but whether there is a reasonable possibility that the error complained of contributed to the guilty verdict.

11. CRIMINAL LAW — EVIDENCE — MOTIVE — PAUPERS — MANIFEST INJUSTICE.

Evidence of poverty and unemployment to show motive adduced by a series of questions by a prosecuting attorney is generally not admissible because its probative value is outweighed by unfair prejudice and discrimination toward a large segment of the population, and the risk is that the jurors will view a defendant as a "bad man"; however, where some of the questions are relevant to show the defendant's connection with the offense and no showing is made that manifest injustice resulted reversal of a criminal conviction is not required.

12. CRIMINAL LAW — JURY INSTRUCTIONS — LESSER INCLUDED OFFENSES.

An instruction to a jury which suggests that deliberations relative to a defendant's guilt of a lesser included offense cannot begin until the jury determines that the defendant is not guilty of the charged offense constitutes error requiring reversal.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Prin-

cipal Attorney, Appeals, and *Janice M. Joyce,* Assistant Prosecuting Attorney, for the people.

*Ronald A. Molter,* for defendant on appeal.

Before: BRONSON, P.J., and R. M. MAHER and F. X. O'BRIEN,* JJ.

BRONSON, P.J. Defendant was convicted of unarmed robbery contrary to MCL 750.530; MSA 28.798, and unlawfully driving away an automobile (UDAA), in violation of MCL 750.413; MSA 28.645,[1] following a jury trial in the Detroit Recorder's Court. Defendant was sentenced to concurrent terms of from 3 to 5 years for UDAA and from 3 to 15 years for the robbery. He now appeals as of right.

The complaining witness, Linda Bridges, testified that on September 20, 1979, she was driving her 1977 Thunderbird when she pulled into a parking lot at Six Mile and Meyers in Detroit. She stated that she locked her car, which contained a purse, a diamond ring, a checkbook, credit cards, and approximately $25, and went to mail a letter. Upon her return, however, the vehicle was un-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Defendant was originally charged with UDAA or, in the alternative, receiving and concealing stolen property with a value in excess of $100 in contravention of MCL 750.535; MSA 28.803. Following an oral motion by the prosecutor at the close of the preliminary examination, defendant was also bound over on a charge of armed robbery. MCL 750.529; MSA 28.797. Before the case was submitted to the jury, the receiving and concealing count was dropped. Defendant argues on appeal that the magistrate erred in granting the prosecution's motion to add a count of armed robbery. Since the objection to the added count was not renewed before the trial court, any defect in the proceedings before the magistrate was waived. *People v Jones,* 75 Mich App 261, 268; 254 NW2d 863 (1977), *lv den* 402 Mich 822 (1977). In any case, an examining magistrate is empowered to add a count not originally charged in the absence of unfair surprise to defendant. *People v Mathis (On Remand),* 75 Mich App 320, 329, 326; 255 NW2d 214 (1977). There was no unfair surprise here.

locked. Before she could close the door, defendant approached her with a gun. He told Ms. Bridges to exit from the vehicle. She tried to close the door but failed. After a brief struggle, defendant was able to pull her out of the car, get into the vehicle himself, and drive away.

Defendant's testimony was somewhat different than complainant's and substantially consistent with previous statements he had given to the police. Defendant indicated that he had been in a record store in the Six Mile-Meyers area when he observed an unoccupied 1977 Thunderbird with its motor running. Thereafter, he jumped into the car, heard a woman scream, and took off. Defendant specifically denied threatening anybody with a gun or struggling with anyone.

Defendant was arrested about one hour after the incident. The police obtained a description of the stolen vehicle and followed defendant to his house. He generally matched the description of the thief given by Ms. Bridges and was arrested.

Among his several claims, defendant contends that on the facts of this case convictions for both UDAA and robbery violates his constitutional right to be free from double jeopardy. We agree.

Where, on the facts of a particular case, the jury must necessarily find a defendant guilty of the lesser offense in order to convict him of the greater, it is not consonant with the prohibition against double jeopardy to permit convictions for both the greater and the lesser offense. *People v Cook,* 236 Mich 333; 210 NW 296 (1926), *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976), *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977), *People v Jankowski,* 408 Mich 79; 289 NW2d 674 (1980). Where the object of the taking is an automobile and robbery is the charged

offense, UDAA is a lesser cognate offense which the trial court must instruct upon if it is requested by the defense. *People v Harris,* 82 Mich App 135; 266 NW2d 477 (1978). *Jankowski* clearly establishes that a defendant may not be convicted of the most serious crime and also lesser cognate offenses based upon one illegal taking.

The prosecution on appeal argues, however, that this case involves two distinct crimes and thus is not controlled by *Jankowski* and its predecessors. The prosecution notes that the information filed in this matter alleged that items other than the automobile were taken from the victim. The prosecution contends that these other items constitute the basis of the robbery charge, while the automobile is the basis for the UDAA conviction. We disagree that two distinct crimes were proven on the facts of this case.

The prosecution's argument focuses solely on the separate items of property taken and not defendant's criminal behavior or his intent. We believe that the references in *Jankowski* to a "single act" and a "single taking" allude to a single criminal transaction in which defendant's act manifests a single criminal intent. Acceptance of the prosecution's argument would lead to absurd results. For instance, one taking in which a watch with a value of $250 and a $10 bill were stolen could result in convictions of larceny over $100 and larceny under $100 by making the watch and the federal reserve note the basis of two separate counts in the information. Similarly, if a defendant robbed his victim of a wallet containing 50 credit cards, under the prosecution's argument 50 counts of armed robbery could be properly charged.[2]

---

[2] Even were we to accept that one act resulting in the theft of several items could constitute multiple offenses, there would still be a double jeopardy problem in this case. The court charged:

"It is the prosecution's theory in this case that on or about Septem-

In the instant case, there was no break in time or any significant intervening circumstances between the taking of the car and the purse. Indeed, it was a mere fortuity that the purse, containing the other items, happened to be in the vehicle at the time of the taking. Defendant committed one criminal act manifesting one criminal intention. Under *Jankowski* separate convictions and punishments would violate the prohibition against double jeopardy.

Generally, where a defendant is convicted of both a greater and a lesser offense, the remedy is to vacate the conviction on the lesser offense and affirm the conviction on the greater offense. See *People v Grable,* 95 Mich App 20; 289 NW2d 871 (1980), *People v Hale (On Remand),* 103 Mich App 273; 303 NW2d 17 (1981). In this case, however, another error precludes utilizing the usual remedy.

We agree with defendant's contention that the prosecutor's rebuttal argument constituted an improper appeal to the jurors' civic duty and fears. A civic duty argument is impermissible because it injects into the trial issues beyond the guilt or innocence of the defendant and encourages the jurors to convict based on some societal obligation

ber 20, 1979 that 17150 Meyers, in the City of Detroit on a Thursday, that the defendant Rickey Leverette approached the complainant Linda Bridges in the parking lot and at gunpoint ordered her out of the car. The defendant Rickey Leverette then took the car, drove north onto Meyers to Santa Maria, then turned right.

"Now if you find that the people have established their theory, you must find the defendant guilty of count I, unlawfully driving away an automobile, and count II, robbery armed."

The court's instruction, which apparently was submitted by the prosecutor as his theory of the case, specifically told the jury that the theft of the car was the basis of both counts. Thus, the jury did, in fact, return the multiple guilty verdicts based on the theft of but one item. Moreover, trial on the theft of the other stolen items would now be barred by the Michigan doctrine of transactional double jeopardy. *People v White,* 390 Mich 245; 212 NW2d 222 (1973).

apart from the evidence adduced. See, for instance, *People v Wright (On Remand)*, 99 Mich App 801, 809; 298 NW2d 857 (1980), *lv den* 410 Mich 854 (1980).

In this case the prosecutor stated:

"Ordinarily in presenting the facts of the case which is my job as the prosecutor to do, I can't just sit back and listen to the proofs and comment on the evidence as it comes out. But every now and then you get a little upset because here we've got a situation where you've got Mrs. Bridges, who's being attacked, her credibility, her story, the manner in which she's describing the act. She didn't ask to have her car stolen that day.

"On the other hand, you have a person who's charged with a crime who admits to taking the car and then the argument that he's a person who is not used to being questioned. by police officers. So when he admits to something in the police station, let's give him a break, okay? After a while you hear this for a little while and it gets you a little upset because who's supposed to get a break; the criminal or the victim in our society? This isn't a game where you're weighing things on scales. If you listen to defense counsel's version, if you ever had a crime where there were no people as witnesses around, the defendant should automatically go free, because it's a one-on-one situation, and that's not the law ladies and gentlemen. That can't possibly be the law. Does she mean to say that if you're out in the street and there's no witnesses—"

At this point an objection was interposed but was overruled by the trial court. Thereafter, the prosecutor continued:

"If you were out on the street and there's no witnesses around and someone comes up and commits a crime against you, are we to say then that we cannot bring prosecution against that person that committed the crime when that person gets on the stand and admits, 'yes, I was there, but you've only got one

witness, the victim, so you can't convict me because there's only one witness.' Block the scales. That is not the law ladies and gentlemen; that is nonsense."

The prosecutor did not emphasize in his argument how defendant's testimony was unbelievable. Instead, the argument injected into the case the broader issue of the problem of crime. The prosecutor's argument also implied that the jury should convict out of sympathy to the victim. Furthermore, the prosecutor in part argued from a hypothetical case putting the jurors in the position of the victim.[3] Compare, *People v Edward Villarreal,* 100 Mich App 379, 392-393; 298 NW2d 738 (1980).

The harmless error standard applicable to this type of problem requires us to reverse if the error was so offensive to the maintenance of the judicial system that it can never be deemed harmless or if, in a trial free of the error, one juror might have voted to acquit. *People v Swan,* 56 Mich App 22, 31-33; 223 NW2d 346 (1974), *lv den* 395 Mich 810 (1975).

We are not convinced that the prosecutor deliberately injected error into the proceedings. While arguments appealing to a jury's fears or indicating that a duty to convict exists have been condemned,[4] the impermissible portion of the prosecutor's argument here was not so blatantly improper that we believe he intentionally injected error into the trial. Instead, it appears that he was merely caught up in the heat of battle. Thus, this case is distinguishable from *Wright, supra,* in which the prosecutor's argument concerning the

---

[3] Later in his argument the prosecutor again made statements associating the jurors as victims when he stated, "I don't know how many of you have ever been mugged, or attacked or held up at gunpoint * * *."

[4] *Villarreal, supra, People v Biondo,* 76 Mich App 155, 159-160; 256 NW2d 60 (1977), *lv den* 402 Mich 835 (1977).

effects of drug trafficking on the community had been squarely condemned in *People v Gloria Williams,* 65 Mich App 753; 238 NW2d 186 (1975).

In considering the likely effect of a prosecutor's argument on the verdict, the improper statements must be evaluated in light of their relationship to the evidence adduced at trial. Each case must be considered on its own facts. An improper argument harmless in one case may be reversible in another. See *People v Cowell,* 44 Mich App 623, 627-628; 205 NW2d 600 (1973).

In many cases, the argument made here would not warrant reversal.

In this case, however, the argument cannot be deemed harmless in respect to the robbery charge. The case turned on the jury's assessment of the defendant's and the victim's credibility. The trial was short; the evidence of guilt on the robbery charge was not overwhelming. Consequently, it is impossible for us to say that one juror would not have voted to acquit on the robbery charge but for the error.[5] However, since defendant admitted driving off with the car without permission, the error in the argument cannot be deemed harmful in respect to the UDAA charge.[6]

---

[5] The tenor of the prosecutor's argument suggests that in part he was legitimately rebutting the defense counsel's argument. However, this is not really the case. Defense counsel did not argue that defendant could not be convicted of robbery because the complainant was the only witness. Rather, she specifically suggested that defendant's story was more credible concerning how the taking occurred. She never indicated that defendant should be given a "break". Her argument was entirely proper and related to the evidence. As such, it did not give the prosecution the right to respond with an improper rebuttal argument.

[6] We question the extent to which the present day jury is actually likely to be swayed by a prosecutor's comments. At one time it was probably true that juries routinely gave greater weight to a prosecutor's statements because he acts with the imprimatur of the state. We believe, however, that in post-Viet Nam, post-Watergate American society the average juror is not so easily swayed by the state-

Our resolution of the argument issue allows us to formulate the following remedy in respect to the double jeopardy problem. Defendant's UDAA conviction can stand, and the unarmed robbery conviction is vacated. However, if the prosecution believes the interests of justice will best be served by retrying defendant for unarmed robbery, it may do so. If a reprosecution is brought, the jury must be instructed that its verdict may be guilty of unarmed robbery or guilty of UDAA, but not both.

We will briefly address the remainder of the issues raised by defendant in case the prosecution elects to try him again. None of the remaining issues would entitle defendant to a reversal of his conviction. However, other problems with the trial are apparent.

We agree with defendant that under the standards set forth in *People v Kachar,* 400 Mich 78, 95-96; 252 NW2d 807 (1977), the complainant's in-court identification of defendant should not have been allowed. Prior to the preliminary examination, where the complainant identified defendant, she had incorrectly chosen a person other than defendant at a lineup as the thief. This incorrect identification was positively asserted. None of the other *Kachar* factors cut in favor of admitting the questionable identification. The prosecution bears

---

ments of public officials. This is not to say that occasionally juries are not impressed with the prosecutor's position and thus give undue weight to his argument. It seems to us that problems with prosecutorial arguments could be handled by explicit instructions from the trial court. Prior to the arguments the court could state that the attorneys are given free rein to say what they want to but that these arguments are not evidence, should be treated with skepticism, and represent the individual attorney's view of the case. In the case of a particularly strong argument, these warnings could be repeated. However, the sweeping change of the variety suggested here would require a reappraisal of prosecution arguments by the Michigan Supreme Court. Although counsel in this case objected to the argument, no cautionary instruction was given, nor were specific, explicit warnings about closing arguments of the type suggested here given.

the burden of showing by clear and convincing evidence that an unduly suggestive confrontation between the witness and the defendant did not taint the subsequent in-court identification. *People v Richmond,* 84 Mich App 178, 182; 269 NW2d 521 (1978). This burden was not satisfied in this case. The fact that the prior confrontation occurred at the preliminary examination does not *per se* mean it cannot be considered unduly suggestive. *People v Solomon,* 47 Mich App 208; 209 NW2d 257 (1973), (LESINSKI, C.J., *dissenting), remanded for the reasons stated by the dissent* 391 Mich 767; 214 NW2d 60 (1974).

*Solomon* involved other indicia of undue suggestiveness not present here, namely, that the witness was told by the police that the man who robbed him was going to be in court and, in fact, defendant was the only person there who could possibly have been the culprit. Nonetheless, this factual difference is not dispositive. *Solomon* adopted a totality of the circumstances test in determining whether a preliminary examination confrontation is unduly suggestive. The factors identified as important by then Chief Judge T. JOHN LESINSKI in *Solomon* are included within the *Kachar* test. While *Kachar* actually was concerned with the problem of an independent basis for the identification following a suggestive identification procedure, the *Kachar* factors are equally applicable here where the problem of an unduly suggestive confrontation, itself, must be resolved in relationship to the totality of the circumstances. In some cases, such as this one, undue suggestiveness in the confrontation and an independent basis for the identification are inextricably intertwined. See *People v Lyles,* 100 Mich App 232, 245-247; 298 NW2d 713 (1980). In *Lyles,* while we referred

separately to the *Solomon* and *Kachar* criteria, it is apparent that the *Solomon* factors merely consist of two of the *Kachar* factors.

Despite the foregoing, the error was harmless beyond a reasonable doubt.[7] Defendant admitted that he took the car, and there was substantial circumstantial evidence implicating him as the thief.

Defendant next argues that two series of questions, one put to him and one to his mother, insinuated that he committed the crime because he was unemployed and poor. These questions were not objected to during trial. Some of the questions were arguably relevant to show that defendant had indeed robbed the victim of some money. The complainant stated that she had about $25 in her purse at the time of the robbery. Defendant was arrested with $200 on his person. He testified that he had cashed a disability check for $180 from Ford Motor Company on the day of the incident. Thus, from the line of questions asked, the jury could infer that the extra money was obtained from the victim.[8] *People v Stanton,* 97 Mich App 453, 460; 296 NW2d 70 (1980).

Other questions asked by the prosecutor were clearly immaterial. For instance, defendant's mother was asked if her son paid room and board. To the extent that the questions were improper,

[7] Although it is rarely articulated in the opinions of this Court, the harmless beyond a reasonable doubt standard propounded in *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967), relating to fundamental constitutional errors, seems to require more than merely ascertaining if, but for the error, one juror might have voted to acquit. Instead, the relevant inquiry is whether there is a reasonable possibility that the erroneously admitted evidence contributed to the guilty verdict.

[8] At the same time, however, since defendant admitted removing money from the purse—which he claimed was merely lying on the car seat when he took the car—it is difficult to see how the source of the money was material in this case.

we are convinced that they did not result in manifest injustice. See *People v Smith,* 80 Mich App 106, 114-117; 263 NW2d 306 (1977), *lv den* 406 Mich 920; 275 NW2d 259 (1979). The prosecutor did not argue that the theft was committed for economic reasons. Furthermore, it is clear that on the day of the theft defendant did enjoy a legitimate source of income.

Defendant next asserts that the following instruction tended to coerce a guilty verdict on the greater offense:

"Now I'm going to instruct you on a lesser included offense, which is not one of the principle charges. The two charges in this case are unlawfully driving away an automobile and also robbery armed. However, I'm going to give you an instruction on a third offense. It is not charged, but it is a lesser included offense that you can consider after consideration of the principle charges. This charge is unarmed robbery."

It constitutes reversible error to give an order of consideration instruction which suggests that the jurors must find a defendant innocent or not guilty of a greater offense before turning their deliberations to lesser offenses. *People v Hurst,* 396 Mich 1, 10; 238 NW2d 6 (1976), *People v Mays,* 407 Mich 619; 288 NW2d 207 (1980). In this case, however, nothing in the court's charge suggested a verdict actually had to be reached on the greater offenses before consideration of the lesser offense.[9] We further note that, in fact, defendant was convicted of the lesser offense of unarmed robbery instead of the greater charged offense of armed robbery.

---

[9] Although we do not believe the instruction was erroneous, we also believe that it would be preferable if the trial court explicitly indicated that the jurors need not reach an agreement on the greater charge before considering any lesser offenses. See *Mays, supra,* 623, fn 1.

Defendant finally contends that the prosecutor argued facts not in evidence in closing. We disagree. The prosecutor's argument was limited to the facts and fair inferences to be drawn from the facts.

Defendant's conviction for UDAA is affirmed. Defendant's conviction for unarmed robbery is reversed. Upon remand, the prosecution may elect to retry defendant for unarmed robbery and UDAA. However, in this instance, the jury must be instructed that a guilty verdict on one charge constitutes an acquittal on the other.[10]

Affirmed in part, reversed in part and remanded.

---

[10] Although we found no error requiring reversal in respect to the UDAA conviction, if defendant is retried for unarmed robbery, his UDAA conviction is vacated. It would be unfair to require defendant to have his case submitted only on the unarmed robbery charge. On the facts of this case, the jury is unlikely to want to acquit defendant entirely. If UDAA is not offered as a possible verdict, it is inherently likely that the jury would convict defendant of robbery even if it really believed his story concerning what happened.