PEOPLE v SOLOMON

OPINION OF THE COURT

1. EVIDENCE—HEARSAY—DEFINITION.

Hearsay evidence may be defined as that evidence offered in court of a statement made out of court to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court declarant.

2. EVIDENCE—HEARSAY.

The principal justification for the rule of evidence prohibiting hearsay is the lack of opportunity for the adversary to cross-examine the absent declarant whose out-of-court assertion is reported by the testifying witness.

3. EVIDENCE—HEARSAY—STATE OF MIND.

Declarations offered to show circumstantially the feelings, knowledge, or state of mind of the declarant are not subject to attack as hearsay.

4. CRIMINAL LAW—EVIDENCE—HEARSAY.

A police officer's testimony in which the details of eyewitness descriptions given him after a robbery were recounted was not hearsay where the statements were not offered to show that men of a certain description actually committed the robbery, but instead to show, in response to cross-examination of the actual declarants, that eyewitnesses at the time could relate a description of the suspects.

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 493, 497.
[2, 4] 29 Am Jur 2d, Evidence §§ 493–497, 1094.
[3] 29 Am Jur 2d, Evidence § 497.
[5] 29 Am Jur 2d, Evidence § 496.
[6] 29 Am Jur 2d, Evidence §§ 493, 496.
[7, 8] 21 Am Jur 2d, Criminal Law § 368.
    29 Am Jur 2d, Evidence § 4.
[9–11] 29 Am Jur 2d, Evidence §§ 367, 371, 1143.

5. CRIMINAL LAW—EVIDENCE—HEARSAY—RES GESTAE EXCEPTION—
DISCRETION.

The trial court did not err in ruling that a police officer's testimony was admissible under the res gestae exception to the hearsay rule where the testimony consisted of the details of eyewitness descriptions of suspects in an armed robbery given to the officer immediately following the robbery, because the trial court is given considerable discretion in determining whether the descriptions were spontaneous, unreflecting responses made before there was time to contrive and misrepresent, and where the record does not indicate an abuse of such discretion there is no error.

6. EVIDENCE—HEARSAY—HARMLESS ERROR.

Any error resulting from alleged hearsay testimony is rendered moot and harmless where all parties to the out-of-court conversation were testifying witnesses subject to cross-examination and recall.

7. CRIMINAL LAW—IDENTIFICATION—EYEWITNESSES—LINEUP.

An accused is not entitled to a lineup every time eyewitness testimony and identification is contemplated in a court setting.

8. CRIMINAL LAW—IDENTIFICATION—EYEWITNESSES—COURT SETTING—
IMPERMISSIBLE SUGGESTION.

Undue suggestion does not arise merely from the fact that the authorities suspect and accuse a certain individual; therefore, eyewitness identification made in a court setting where the witness is subject to cross-examination by defense counsel is not, without more, impermissibly suggestive, nor does it give rise to a substantial likelihood of irreparable misidentification.

9. CRIMINAL LAW—IDENTIFICATION—IMPERMISSIBLE SUGGESTION—MO-
TION TO SUPPRESS—EVIDENTIARY HEARING.

Failure of the trial court to hold a separate hearing to determine whether the in-court identification of the defendant at preliminary examination was impermissibly suggestive was not error where the factual circumstances surrounding the allegedly suggestive confrontation and the possibility of prior police suggestion were known to defendant and counsel prior to trial and no timely motion to suppress the identification evidence was made before trial, nor was the delay in so moving adequately explained.

DISSENT BY LESINSKI, C. J.

10. CRIMINAL LAW—IDENTIFICATION—IMPERMISSIBLE SUGGESTION—EV-
IDENTIARY HEARING.

*A defendant was entitled to an evidentiary hearing to determine*

*if a pretrial in-court identification had been impermissibly suggestive because of police comment to the witness before the preliminary examination that they had the right man where the defense moved for the separate hearing before the complainant made any identification at trial, the court was aware that the identification at preliminary examination had been the only identification of defendant by complainant, and the court was also aware that the confrontation was 2-1/2 years after the crime.*

11. Criminal Law—Identification—Impermissible Suggestion.

*A court must consider all relevant facts concerning an allegedly impermissibly suggestive confrontation and identification at the preliminary examination to determine if it violated due process; such facts would include the time between the crime charged and the confrontation, whether the police told the witness they had the right man in custody, and the witness's ability to give any identifying characteristics of the defendant.*

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted Division 1 December 4, 1972, at Detroit. (Docket No. 13040.) Decided May 22, 1973.

Willie Solomon was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Edward R. Wilson,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and *Martin I. Reisig,* Assistant State Appellate Defender, for defendant.

Before: Lesinski, C. J., and J. H. Gillis and Peterson,* JJ.

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

J. H. GILLIS, J. Defendant Willie Solomon was convicted by a jury on September 21, 1971 of armed robbery. MCLA 750.529; MSA 28.797. He appeals as of right.

On July 3, 1968 two men entered a jewelry store and inquired of the owner about the sale of a watch. They left after telling the owner they would return with the requisite amount of money to purchase the watch. In a short time they returned. One of the men, who the owner subsequently identified as defendant, thrust a pistol in the owner's stomach, and announced they wanted all the watches as' well as everything else in the store. The owner was forced to lie on the floor while the two men methodically confiscated a large amount of his inventory as well as the available cash.

As they exited the store, the owner grabbed his pistol and ran after them. An off-duty policeman, standing by his car in a nearby gas station, saw the two men run out of the store followed by the owner. The officer called the owner aside and chased the pair down the street, into an alley, and then into another alley. One of the pair fired at the officer, narrowly missing his head. During the chase, and at that point, the officer recognized defendant as one of the two men he was chasing. While he only saw his face for six to ten seconds, he realized he recognized defendant, having seen him on prior occasions, but did not recall defendant's name.

The other man was apprehended by other officers, but defendant escaped. Arrest warrants were issued the next day against both defendant and the captured bandit by name. Defendant was not arrested until early in 1971.

On February 19, 1971 preliminary examination

was held. On that occasion the owner of the jewelry store identified defendant as the man with the gun. In response to defense counsel's inquiry about whether his testimony, given more than two years after the incident, was coached, the owner replied:

"The only thing they told me—that they had the guy, but that's him."

At trial, in response to a similar inquiry of counsel, he offered:

"They didn't tell me that they had him. They told me they think they got the right fellow. They didn't say for sure that they had him.

\*   \*   \*

"But I know him, though."

Also at trial, defense counsel thoroughly cross-examined the eyewitnesses about the descriptions of the wanted men which they gave to police who arrived shortly after the incident. Each witness so cross-examined recalled only the substance of his description so given, but could not recall the details. The prosecution then called the investigating officer who, over objection, recounted from his police report the details of those descriptions given him.

On appeal, defendant contends it was error to allow the officer to relate the descriptions of the wanted men given by the eyewitnesses. He argues such testimony is hearsay and is not admissible under any exception to the hearsay rule.

Hearsay evidence may be defined as that evidence offered in court of a statement made out of court to show the truth of matters asserted therein, and thus resting for its value upon the

credibility of the out-of-court declarant. See Mc-Cormick, The Law of Evidence (2d ed), § 246, p 584. Application of the rule prohibiting such evidence reveals its principal justification is the lack of opportunity for the adversary to cross-examine the absent declarant whose out-of-court assertion is reported by the testifying witness.

However, declarations offered to show circumstantially the feelings, knowledge, or state of mind of the declarant are not subject to attack as hearsay. *Hooper-Holmes Bureau, Inc. v Bunn,* 161 F2d 102 (CA 5, 1947); *Callen v Gill,* 7 NJ 312; 81 A2d 495 (1951); *Bridges v State,* 247 Wis 350; 19 NW2d 529 (1945). Here, the statements of the police officer were not offered to show that men of a certain description actually committed the robbery, but instead showed, in response to the cross-examination of the actual declarants, that, in fact, a detailed description of the robbers was given. Viewed in that light the officer's testimony is not hearsay since its purpose was to show that the eyewitnesses at the time could relate a description of the suspects.

The trial court ultimately ruled the officer's testimony admissible under the so-called res gestae exception to the rule against hearsay evidence. Assuming *arguendo* that the complained-of testimony was hearsay, we think the trial court was correct in so ruling. As stated in *People v Ivory Thomas,* 14 Mich App 642, 647 (1968), regarding the res gestae exception:

"The question then is, was the response spontaneous and unreflecting, and *made before there was time to contrive and misrepresent.* In passing upon the answer to this question, *the trial judge is given considerable discretion.*" (Second emphasis supplied.)

On this record we cannot say the trial judge abused his discretion.

Moreover, since the danger of hearsay evidence is the lack of opportunity for cross-examination, *even if* the statements were offered to prove the truth of the matter asserted therein, and were not otherwise admissible under the res gestae exception, we would find no reversible error. All parties to this out-of-court conversation were testifying witnesses and were subject to cross-examination and recall. In such a situation any error resulting from the alleged hearsay testimony is rendered moot and harmless. *People v Rea,* 38 Mich App 141 (1972).

Defendant's second allegation of error is that the complainant's in-court identification of him was based on an unnecessarily suggestive prior identification procedure at preliminary examination. The basis of his contention is that the indication to the victim that the police believed they had the "right man" followed by the "one-to-one" confrontation at preliminary examination violated due process. Consequently, defendant argues the trial court erred by not conducting a separate hearing outside the presence of the jury to determine the legality of the confrontation at preliminary examination.

First, we decline to hold that an accused is entitled to a lineup every time eyewitness testimony and identification is contemplated in a court setting. See *State v Haselhorst,* 476 SW2d 543 (Mo, 1972); *Grigsby v State,* 496 P2d 1188 (Okla Cr App, 1972); *Laury v State,* — Del —; 260 A2d 907 (1969).

Second, we decline to hold that eyewitness identification made in a court setting where the witness is subject to cross-examination by defense counsel is, without more, impermissibly suggestive

and gives rise to a substantial likelihood of irreparable misidentification. While we recognize that it is implicit in such a setting that the authorities believe, at that time, that the accused is the "right man", what emerges from the "one-man showup" cases is that undue suggestion does not arise merely from the fact that the authorities suspect and now accuse a certain individual. See *Moye v State,* 122 Ga App 14; 176 SE2d 180 (1970), and cases cited therein.

Third, it is apparent from the transcripts at preliminary examination and at trial that the quality of the overt police suggestion had little effect on the complainant. In both instances he was positive in his identification and we have no doubt that the overt suggestion conveyed no more of a message than the setting of an in-court identification itself implies. See *Laury v State, supra,* 909. It is difficult indeed, to conceptualize how an eyewitness, called to testify about events with which he is closely related, can, in any event, avoid the notion that he will be asked to make an identification of the person the authorities believe is responsible for the crime. We consider a court room confrontation, where the right of cross-examination of the identifying witness is preserved, to provide adequate protection of the rights of the accused.

Fourth, we do not consider the trial court's failure to hold a separate hearing on this issue to be error. The facts surrounding the in-court identification at preliminary examination and the possibility of prior police suggestion were known to defendant and counsel prior to trial. In *People v Childers,* 20 Mich App 639 (1969), it was held where the factual circumstances surrounding an alleged illegal confrontation are known in advance

of trial, a motion to suppress evidence derived therefrom, to be timely, must be brought *before trial. Childers* also holds where the facts are not known until trial or where other special circumstances make a pretrial motion impossible, such a motion may be made during trial. Then a separate hearing is required. Here, there was no timely motion, nor was the delay in so moving adequately explained.

When defense counsel did move for a separate hearing the trial judge considered the untimeliness of the motion and then ruled that if a sufficient showing of law and facts led to the conclusion that an illegal confrontation occurred, a separate hearing would be held. Since we are not convinced that an illegal confrontation occurred, the trial court was correct in not making a separate record when the issue arose during trial.

Defendant's other issues do not merit discussion. Affirmed.

Peterson, J., concurred.

Lesinski, C. J. *(dissenting)*. Defendant's second allegation of error is that the complainant's in-court identification of him was based on an unnecessarily suggestive prior identification. He argues that presentation of him to the complaining witness at the preliminary examination as the one accused by the police was unduly suggestive. He also contends that the police told the complaining witness before the preliminary examination that they had the right man. He contends that admission of the in-court identification violated his due process rights.[1]

---

[1] I do not reach the defendant's argument that he had a right to a lineup in this case.

*Stovall v Denno,* 388 US 293, 301–302; 87 S Ct 1967, 1972; 18 L Ed 2d 1199, 1206 (1967), recognized the possibility of a due-process violation in a suggestive confrontation, aside from a right to counsel.

"We turn now to the question whether petitioner, although not entitled to the application of *Wade* and *Gilbert* to his case, is entitled to relief on his claim that in any event the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. This is a recognized ground of attack upon a conviction independent of any right to counsel claim. *Palmer v Peyton,* 359 F2d 199 (CA 4th Cir 1966)."

I hold that the preliminary examination is a pretrial confrontation within the meaning of *Stovall. Mason v United States,* 134 US App DC 280; 414 F2d 1176 (1969). I agree with *United States ex rel Ragazzini v Brierly,* 321 F Supp 440, 443 (WD Pa, 1970), which said:

"The preliminary hearing is particularly fraught with the dangers of suggestibility, intentional or otherwise, for it is in this setting that an accused is frequently presented to the victim or witness as one whom the State suspects as being guilty of an offense and, as here, guilty of the very offense to which the victim has been subjected or which the witness has observed. See *Mason v United States, supra,* and *United States v Terry, supra."*[2]

In the case at bar, before the complainant made any identification at trial, the defense attorney moved for a separate hearing to determine if an in-court identification was tainted by the prior

---

[2] *Mason v United States,* 134 US App DC 280, 284; 414 F2d 1176, 1180 (1969); *United States v Terry,* 137 US App DC 267; 422 F2d 704 (1970).

confrontation. The defense argued that the prior confrontation had been suggestive because of police comment. The defense did not argue the suggestibility of the preliminary examination itself as a one-on-one confrontation. The court denied the motion saying that anything the police officer might have said to the witness went only to the credibility of the identification and not its admissibility.

I hold that the trial court erred in not holding a separate hearing at this point. The defense challenged the identification evidence alleging police suggestion. The court was aware at this point that the identification at the preliminary examination had been the only identification of defendant by the complainant. The court was also aware that the confrontation was 2-1/2 years after the robbery. This was sufficient to warrant an evidentiary hearing on the constitutional issue of the admissibility of this in-court identification. *People v Maybee,* 40 Mich App 397 (1972). See also *Ragazzini, supra.*

I hold that due process requires the court on a remand to review the total circumstances of the prior identification to determine if the in-court identification was admissible. The claim that the preliminary examination was itself a prejudicial confrontation because it amounted to a one-on-one confrontation, first raised in the motion for a directed verdict and later on appeal, is therefore a question to be resolved on remand.

The standard of review in this case is set out clearly in *Neil v Biggers,* 409 US 188; 93 S Ct 375; 34 L Ed 2d 401 (1972), as the "totality of the circumstances" test to determine the "likelihood of misidentification" which would violate due process. The court must consider all relevant facts concern-

ing the preliminary examination identification to determine if it violated due process. In *Neil* the court lists some of the relevant factors—the ones particularly applicable to that case. As in *Neil,* the time between the robbery and the confrontation is very important. I would note that here it was 2-1/2 years while in *Neil* it was only seven months. Also the complainant in *Neil* was with the defendant much longer than the complainant was with the assailant in this case. Relevant too is whether the police did tell the witness that they had the right person in custody. This might have made the confrontation so suggestive as to have precluded a reliable identification. Also relevant is the witness's failure to give any identifying characteristics on cross-examination. He remembered nothing specific about the robbers at the time of trial, except that they were wearing dark clothing.

Finally I note that this was not an ordinary open-court preliminary examination. The complainant himself described the confrontation as follows:

"*Q.* Did anyone tell you to come down because they had the man that robbed you?

"*A.* They told me that they had the man that robbed me when they called me. When they sent me the subpoena they didn't tell me anything but afterwards they called and told me to be sure and to come down on downtown to identify this man.

"*Q.* O.K. Then you came down and you sat in the courtroom, is that right?

"*A.* Yes.

"*Q.* As a matter of fact, you went back in the judge's chambers, didn't you?

"*A.* Yes.

"*Q.* And when you went back there, the people that were there were yourself and Mr. Solomon and Mr.

Solomon's lawyer and a lady from the prosecutor's office and the judge and the court reporter; right?

"*A.* Yes.

"*Q.* And there was no one else there to identify other than Mr. Solomon, is that correct?

"*A.* Yeah. There was nobody else there.

"*Q.* So he was the only one anybody picked out?

"*A.* Yeah. He was the onliest one.

"*Q.* All right. Now from the date that this robbery occurred, July 3, 1968, to the date of that preliminary hearing, which was February 19, 1971, had you ever seen Mr. Solomon?

"*A.* No.

"*Q.* So two and a half years elapsed, a little more than two and a half years, is that correct?

"*A.* Yes.

"*Q.* And you had seen Mr. Solomon for what you say may have been less than ten minutes on July 3—that's your testimony, isn't it?

"*A.* Yes.

"*Q.* And you had—you were never shown a lineup, were you?

"*A.* No."

The trial court would have the power to totally exclude this identification if it found that the pretrial confrontation violated due process and that the in-court identification had no independent basis—independent of the preliminary examination identification.

Since the primary issue at this trial was the identification of defendant, the identification by the complaining witness was crucial. Two other witnesses identified the defendant; but both had only seen the robbers' faces as they ran from the scene, at a considerable distance and for only a few seconds. They first saw defendant in the courtroom three years after the robbery. Neither of the other witnesses could give any specific facial char-

acteristics of the escaped robber, except that he
was dark skinned. Additionally, one of the wit-
nesses was substantially impeached on cross-exam-
ination. The record does not explain how an arrest
warrant naming defendant could have issued the
day after the robbery. None of the prosecution
witnesses knew defendant's name at that time.
Therefore, if the trial court should determine that
the in-court identification by the complaining wit-
ness was inadmissible, this would constitute re-
versible error.

I would remand for proceedings consistent with
this opinion.