PEOPLE v MICHAEL FUQUA

Docket No. 71904. Submitted December 6, 1984, at Detroit.—Decided
    March 6, 1985.

    Michael Fuqua was convicted of second-degree murder and fel-
    ony-firearm, Recorder's Court of Detroit, Beverly Anne Jasper,
    J., in a second trial after his first trial resulted in a hung jury.
    Defendant appealed, alleging several errors. *Held:*

        1. The trial court erred in refusing to instruct the jury on the
    theory of self-defense. The evidence of an argument shortly
    before the shooting and of defendant's belief that the victim
    had a gun was sufficient to raise a question of whether the
    defendant acted in self-defense. The fact that defendant also
    argued the question of his identification, a defense inconsistent
    with that of self-defense, does not preclude raising the theory of
    self-defense.

        2. The evidence would have supported an instruction on
    involuntary manslaughter resulting from the intentional aim-
    ing of a firearm without malice. The trial court's refusal to
    instruct the jury on that offense was error.

        3. The defendant did not show any prejudice by the prosecu-

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Trial §§ 698, 699.
    Separation of jury in criminal case before introduction of evidence-
        modern cases. 72 ALR3d 100.
[2] Am Jur 2d, Criminal Law § 191.
    See the annotations in the ALR3d/4th Quick Index under Defenses.
[3] Am Jur 2d, Homicide § 42.
    Propriety of manslaughter conviction in prosecution for murder,
        absent proof of necessary elements of manslaughter. 19 ALR4th
        861.
[4, 5] Am Jur 2d, Criminal Law §§ 998 *et seq.*
    Admissions to prevent continuance sought to secure testimony of
        absent witness in criminal case. 9 ALR3d 1180.
[6] Am Jur 2d, Criminal Law § 945.
    Admissibility of evidence of lineup identification as effected by
        allegedly suggestive lineup procedures. 39 ALR3d 487.
    Admissibility of evidence of showup identification as effected by
        allegedly suggestive showup procedures. 39 ALR3d 791.

tion's failure to produce at trial the medical examiner who conducted the autopsy on the deceased.

4. Defendant failed to preserve for appeal the question of whether certain autopsy results were hearsay.

5. The failure to produce three police officers at trial was not error. The officers were not res gestae witnesses, and their testimony, which would have been presented for impeachment purposes, would have been cumulative.

6. The fact that the initial identification of the defendant by two of the witnesses was made in court at the first trial, without the witnesses' having testified at the preliminary examination or having attended a lineup, did not render that identification inherently suggestive. Although under certain circumstances such a first identification might be found to render the identification at the second trial suspect, no such circumstances were established in this case.

Reversed and remanded.

1. CRIMINAL LAW — THEORY OF CASE — JURY INSTRUCTIONS.
   A defendant's theory of the case must be presented to the jury if that theory is supported by the evidence.

2. CRIMINAL LAW — INCONSISTENT DEFENSES.
   A defendant may argue inconsistent defenses.

3. HOMICIDE — MANSLAUGHTER — MURDER — JURY INSTRUCTIONS.
   Manslaughter is not a necessarily lesser included offense of murder; it may, however, be a cognate lesser included offense depending upon the evidence produced at trial and where the evidence in a trial for murder would support a finding of manslaughter the court must instruct the jury on manslaughter if requested to do so.

4. CRIMINAL LAW — WITNESSES — FAILURE TO PRODUCE WITNESS — HARMLESS ERROR.
   Generally, a witness indorsed by the prosecutor, even a non-res gestae witness, must be produced at trial absent a finding of due diligence by the prosecutor in attempting to obtain the witness's presence; however, lack of prejudice to the defendant by nonproduction of the witness may render harmless any error in the failure to produce the witness.

5 CRIMINAL LAW — WITNESSES — FAILURE TO PRODUCE WITNESS — APPEAL.
   Failure to move for a hearing during or following trial regarding the prosecutor's failure to produce an alleged res gestae witness

forecloses appellate review of the issue unless there was manifest injustice.

6. CRIMINAL LAW — IDENTIFICATION — WITNESSES.

There is no per se rule of inherent suggestiveness resulting in a tainted identification of a defendant where the witness who is asked in court to identify the defendant has not previously identified the defendant in any pretrial proceedings; however, in a second trial, a hearing may be necessary to resolve the question of the validity of the witness's identification because of the possibility of prejudice caused by the previous identification made in that courtroom's setting.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Rosemary A. Gordon,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Kim Robert Fawcett* and *Susan M. Meinberg),* for defendant on appeal.

Before: DANHOF, C.J., and T. M. BURNS and R. H. BELL,* JJ.

PER CURIAM. Defendant appeals as of right from his jury-based convictions of second-degree murder, MCL 750.317; MSA 28.549, and felony-firearm, MCL 750.227b; MSA 28.424(2), in the slaying of Salvador Van Dasher. On April 22, 1983, defendant was sentenced to prison for from 50 to 75 years on the second-degree murder conviction and to a mandatory, consecutive two-year term on the felony-firearm conviction.

Brenda Foster testified that on the night in question she and Barbara Truss went to a Shell service station and, while Foster was pumping gas, a white car pulled into the gas station and parked

* Circuit judge, sitting on the Court of Appeals by assignment.

on the sidewalk. A conversation ensued between the defendant, who was a passenger in the white car, and Van Dasher, who had just moved his car out of the pump area. The conversation became heated and defendant partially exited from his car and fired one shot at Van Dasher. Truss and Johnny Parham, who was at the gas station talking to Van Dasher, testified in similar fashion.

Thereafter, Officer John MacNicol arrived at the scene and was given a license plate number of the white car. A registration check on the vehicle revealed that it was registered to a Donald Murphy. Officer MacNicol issued a general description of the car to any police officer on patrol.

Sergeant Robert Morris testified that the person to whom the car was registered and his brother, the Murphys, had turned themselves in and had informed the police that they were in the car from which the "shooter" exited. At this time, the Murphy brothers were the primary suspects. The next day defendant voluntarily surrendered. Although a lineup was not held, the Murphys did identify defendant at the preliminary examination. The other eyewitnesses did not attend the preliminary examination, but identified defendant, for the first time, at his November, 1982 trial. That trial resulted in a hung jury.

Ronald Murphy testified that he drove his brother and the defendant in the white Mustang on the night in question. His brother sat in the back seat while defendant sat in the front passenger seat. While driving, their car was sideswiped by another car and both drivers exchanged gestures. During this exchange, Mr. Murphy noticed that the other driver, while driving, reached his right hand towards the glove compartment. Mr. Murphy assumed that "[this driver] was going for a gun or something". His assumption was con-

firmed by his brother, Donald, who stated that the other driver had a gun. Because they thought that this other driver had a gun, they became afraid and drove to a house where defendant indicated he could procure a gun. After defendant returned to the car, Mr. Murphy, deciding to file a report, followed the other car to the gas station. When the driver was told that he had hit the white car, he again "went to the glove compartment". Mr. Murphy heard defendant say "Oh, no you're not" and then heard a gunshot. They drove two blocks until defendant "ditched" the gun. Donald Murphy essentially reiterated this testimony. Defendant raises six claims of error on appeal, one of which requires reversal. Because some of these issues may arise again upon retrial, we address them here.

Defendant asserts that the evidence raised a question of whether he acted in self-defense. We agree.

In *People v Hoskins,* 403 Mich 95, 100; 267 NW2d 417 (1978), the Supreme Court held that a defendant's theory of the case must be given if supported by the evidence. The sufficiency of this theory is for the jury to decide. Since there was *some evidence* of self-defense in *Hoskins,* the failure to give the self-defense instruction denied defendant his primary defense.

In *People v Squire,* 123 Mich App 700; 333 NW2d 333 (1983), this Court found no evidence which would support a self-defense instruction, although the evidence did establish that the deceased moved suddenly as if reaching into his pocket or jacket immediately prior to the shooting. This Court rejected the inference that the deceased was reaching for a gun which would imply self-defense since there was no evidence of aggression,

fighting words, an argument, or any offensive posture taken by the deceased. 123 Mich App 708-709.

In the case *sub judice,* there is evidence that an argument occurred prior to the shooting. Both Ronald and Donald Murphy testified that their car was sideswiped by the victim and that gestures were exchanged. The Murphy brothers also testified that on two occasions, one after the car accident and one immediately prior to the shooting, the deceased reached towards the glove box as if reaching for a gun. After this latter incident, defendant was heard saying, "Oh no you're not". Ms. Foster, Mr. Parham and Ms. Truss also established that a heated argument erupted immediately before the shooting. Accordingly, we believe that there was some evidence of self-defense, even though no weapon was, in fact, found in Van Dasher's vehicle. Furthermore, defense counsel advanced the self-defense theory from his initial voir dire of the jury through his closing argument and requested the trial court to instruct the jury concerning this defense. By refusing to instruct on self-defense, the trial court erred and we reverse on this basis.

Further, in response to the prosecutor's argument that defendant argured identification as the central issue, we note that the fact that defense counsel raised the defenses of self-defense and identification, arguably inconsistent with each other, is of no consequence. A defendant is permitted to argue inconsistent defenses. *People v Young,* 120 Mich App 645, 651; 327 NW2d 329 (1982), *lv den* 417 Mich 897 (1983).

Defendant also argues that the evidence was sufficient to allow a jury to find defendant guilty of the lesser included offense of involuntary manslaughter, especially in light of defendant's theories of recklessness, provocation and self-defense.

The principal charge herein was second-degree murder, MCL 750.317; MSA 28.549. The trial court refused to instruct on the defense of involuntary manslaughter resulting from the intentional aiming of a firearm without malice, MCL 750.329; MSA 28.561. We find this refusal to be error.

Manslaughter is not a necessarily lesser included offense of murder. *People v Van Wyck,* 402 Mich 266; 262 NW2d 638 (1978). It may, however, be a cognate lesser included offense, depending upon the evidence produced at trial. Therefore, it must be determined whether the evidence presented at trial would have supported a verdict of guilty of involuntary manslaughter resulting from the intentional aiming of a firearm without malice, for if the evidence supports such, the court's refusal to give the instruction constitutes error. *People v Ora Jones,* 395 Mich 379, 387; 236 NW2d 461 (1975).

In *People v Germain,* 91 Mich App 154; 284 NW2d 260 (1979), *rev'd on other grounds* 411 Mich 858 (1981), the trial court, which instructed the jury on both first- and seond-degree murder, re-fused to instruct on involuntary manslaughter, MCL 750.329; MSA 28.561. There, it was noted that the only evidence required to support a charge for such manslaughter is the intentional pointing of a gun at the deceased and death result-ing from the subsequent discharge of the gun. Accord, *People v West,* 408 Mich 332; 291 NW2d 48 (1980).

In the instant case, both Brenda Foster and Barbara Truss testified that defendant shot the deceased. The medical examiner testified that the deceased died from a single gunshot wound. There-fore, there is proof, which the prosecutor concedes, that defendant intentionally pointed a gun at Van

Dasher and that Van Dasher died as a result of the discharge of the firearm, thereby establishing evidence of the offense of involuntary manslaughter resulting from the intentional aiming of a firearm without malice. Because we remand this case on the basis of the issue first discussed, we need not determine whether this error was harmless. Upon retrial, if the evidence supports such, defendant's request for such an instruction should be honored.

We also note at this point that defendant argues that an instruction on qualified self-defense should have been given as qualified self-defense may mitigate a defendant's culpability from murder to manslaughter. See *People v Springer,* 100 Mich App 418, 421; 298 NW2d 750 (1980). Since defendant made no request for an instruction on qualified self-defense below, we do not address this issue, but, rather, leave resolution of such to the lower court should defendant raise the issue on retrial.

Third, defendant argues that the prosecutor failed to establish due diligence in attempting to produce Dr. Smialek. Dr. Smialek, the medical examiner who conducted and was in charge of the deceased's autopsy, was indorsed on the information but was not produced at either the first or second trial. At the time of trial he had relocated to another jurisdiction. In his place, Dr. Mirchandani, who had observed Dr. Smialek perform the autopsy, testified. At the frist trial, defense counsel stipulated to Dr. Mirchandani's "expertise as a medical examiner and [to] his ability to give an opinion within that speciality". Prior to the second trial, however, defense counsel moved to have Dr. Smialek produced as a res gestae witness. The trial court denied this motion.

Although, as a general rule, a witness indorsed

by the prosecutor must be produced, even a non-res gestae witness, *People v Joyner,* 93 Mich App 554; 287 NW2d 286 (1979), unless nonproduction of the indorsed witness is excused by the prosecution's exercise of due diligence in attempting to obtain the witness's presence, *People v Stokes,* 134 Mich App 146; 350 NW2d 767 (1984), lack of prejudice to the defendant by the nonproduction of the witness will render any error harmless. *People v LeFlore (After Remand),* 122 Mich App 314; 333 NW2d 47 (1983). Here, regardless of whether Dr. Smialek was a res gastae witness, and whether due diligence was established, we do not believe defendant can point to any prejudice.

First, Dr. Mirchandani observed the autopsy performed by Dr. Smialek and thus could testify as to the effects the bullet had on the deceased's body. Second, Dr. Mirchandani is a medical examiner who can testify as to his expertise. Finally, defense counsel stipulated at the first trial to Dr. Mirchandani's expertise and in fact failed to voice an objection on the record to his testifying in lieu of Dr. Smialek. Moreover, defendant's reason for wanting Dr. Smialek produced was to try to establish the trajectory of the bullet, *i.e.,* whether the deceased was leaning towards the glove box when he was shot. Other ample and competent testimony supported that the deceased was reaching toward the glove box.

Defendant's hearsay argument as it relates to the autopsy report has not been preserved for appeal. The only hearsay objection below concerned testimony of the results of a blood test. Although there was mention of blood-test results in the autopsy report, defendant argues generally on appeal that the autopsy report itself was inadmissible hearsay. This was not the nature of defendant's objection below, and defendant has not

indicated how he was prejudiced by the admission of the evidence specifically objected to below. There was no prejudice.

Defendant next claims he is entitled to a remand because of the prosecution's failure to produce Officers Brantley, Lally, and Freeman and its failure to produce a man in a van who was present during the shooting. With regard to the unidenified man, defendant did not object to this witness's nonproduction or move for a hearing during or following trial. Failure to move for hearing forecloses appellate review unless there was manifest injustice. *People v Pearson,* 404 Mich 698, 722; 273 NW2d 856 (1979). Defense counsel did request a hearing regarding the nonproduction of the three officers. At the hearing, defense counsel asserted that the three officers were res gestae witnessess because each took a statement from an eyewitness one to two hours after the incident. We disagree, however, that those witnesses were res gestae witnesses.

The purpose for which defense counsel sought to have the officers' testimony introduced was not to actually develop a full disclosure of the facts surrounding the commission of the charged offense, but to impeach the testimony of Ms. Foster, Ms. Williams and Ms. Truss and thus cast doubt on their credibility. Defense counsel was afforded the opportunity to cross-examine each witness regarding her statement given to the officers. The officers were simply too far removed from the crime to be considered part of the res gastae. They witnessed no part of the criminal transaction. In any event, as their testimony was admittedly for impeachment purposes, it may be considered cumulative in nature.

Finally, defendant argues that the in-court identification by Foster and Truss was tainted by their

suggestive in-court identification of him at the first trial, and that there was no independent in-court identification at the second trial.

The witnesses here neither testified at the preliminary examination nor attended a linup. The first identification of defendant was made at the first trial. Defendant argues that this identification procedure was suggestive since (1) the witnesses at the first trial were not confined to a witness room and were allowed to observe defendant under suggestive circumstance, making it apparent that defendant was the person charged with the offense and was the person the witnesses were asked to identify as the perpetrator, and (2) at the first trial, one of the witnesses concluded for the first time that defendant was the "shooter", which belief was then communicated to the other witness who adopted it and similarly identified defendant as the assailant. In support of his position, defendant cites *People v Solomon,* 391 Mich 767; 214 NW2d 60 (1974), adopting Chief Judge LESINSKI's dissent in 47 Mich App 208, 216; 209 NW2d 257, 260 (1973), and its progeny, all of which involved pretrial identification procedures at a preliminary examination.

In the instant case, the identification occurred at the first trial and did not involve any identification procedure prior to that trial. Arguably, such becomes a pretrial procedure when a second trial is held. However, we reject defendant's intimation that any identification at trial, at which a witness views the defendant, is inherently suggestive since the witness knows that the defendant is the person charged with the offense and is the person the witness is asked to identify. There is no per se rule that, when the initial confrontation occurs at trial, such situation is inherently suggestive.

Nevertheless, we find defendant's arguments po-

tentially valid. If it were shown, as defendant argues, that the description initially given by the witnesses was "substantially inconsistent with the appearance of defendant" and that the witnesses were permitted to communicate with one another after one of them had identified defendant for the first time in court, in addition to the fact that the witnesses were not sequestered during the first trial but, instead, were able to observe defendant for some time "under circumstances which made it apparent that the defendant was the person charged with the crime", such would consitutue sufficient grounds for believing that the prior "one-on-one confrontation" of the witnesses with defendant may have been prejudicial. Under such circumstances, according to *Solomon, supra,* an evidentiary hearing should be held. 47 Mich App 218. We note, however, that defense counsel, when cross-examining both Truss and Foster at the first trial, had the opportunity to establish this fact but failed to do so. Indeed, Foster had testified that she did not discuss the case with Truss, who had previously testified. Because the testimony of Foster belies defendant's contentions in this regard, no reversible error occurred.

In light of our disposition of this case, we decline to address defendant's claim of error relating to sentencing.

Reversed and remanded.