COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WESLEY NEAL, JR.,

        Defendant-Appellant.

UNPUBLISHED
December 13, 2016

No. 328117
Wayne Circuit Court
LC No. 06-001860-01-FC

Before: JANSEN, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of carjacking, MCL 750.529a, armed robbery, MCL 750.529, assault with intent to commit murder, MCL 750.83; felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, second offense, MCL 750.227b(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 40 to 70 years each for the carjacking, robbery, and assault convictions, three to five years for the felon-in-possession conviction, and a consecutive five-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from the robbery and nonfatal shooting of Bruce Clark on November 7, 2005. Shanna McElroy, defendant's occasional girlfriend, testified that she and defendant had planned to commit a crime that involved her posing as a prostitute and then keeping her "date" occupied until defendant arrived, at which point they would rob him. On the night of the shooting, McElroy was on the corner of Joanne and Petoskey Streets in Detroit posing as a prostitute when Clark stopped and picked her up. After Clark picked up McElroy, they parked at another location. Shortly thereafter, defendant arrived, approached Clark's car, pointed a gun at Clark, and demanded money. Clark grabbed the gun, and as the two struggled over it, Clark was shot nine times. McElroy also fought with Clark and hit him with her shoe. Clark was robbed of his car and other belongings, but survived the shooting. Clark identified defendant from a photographic lineup as the person who had shot and robbed him.

Defendant was originally tried by the court without a jury and found guilty as charged. This Court previously affirmed defendant's convictions in *People v Neal*, unpublished opinion per curiam of the Court of Appeals, issued October 23, 2007 (Docket No. 272244). However,

defendant obtained a new trial through federal habeas corpus proceedings, *Neal v Wolfenbarger*, 57 F Supp 3d 804, 811 (ED Mich, 2014), and was convicted again in April 2015, this time by a jury. Defendant then sought a new trial, raising claims of ineffective assistance of counsel and newly discovered evidence. Following an evidentiary hearing, the trial court denied the motion. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts that his trial counsel was ineffective in three respects. We disagree, and conclude that the trial court did not err by denying defendant's motion for a new trial. The trial court's ruling on a motion for a new trial is reviewed for an abuse of discretion, but its factual findings are reviewed for clear error. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). Whether a defendant has been denied effective assistance of counsel is a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). While the trial court's factual findings are reviewed for clear error, this Court determines de novo whether the facts properly found by the trial court establish ineffective assistance of counsel. *Id*.

The effective assistance of counsel is presumed and the defendant bears a heavy burden of proving otherwise. *People v Eloby (After Remand)*, 215 Mich App 472, 476; 547 NW2d 48 (1996). To establish a claim of ineffective assistance of counsel, the defendant must "show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). However, the trial strategy must be sound, and "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Therefore, counsel may be found ineffective with regard to a strategic decision if the strategy employed was not a sound or reasonable one. *People v Dalessandro*, 165 Mich App 569, 577-578; 419 NW2d 609 (1988).

### A. MCELROY'S PRIOR FALSE ACCUSATION

Defendant argues that trial counsel was ineffective for failing to undermine McElroy's testimony by adequately impeaching her credibility with evidence that she had lied about the identity of the gunman in a previous, similar crime, the robbery and shooting death of Carlos Wells, a cab driver. McElroy had given a written witness statement to the police in that 2005 case, in which she had identified defendant's friend, Grayling Regains, as the gunman. Specifically, McElroy had claimed that she, defendant, Regains, and Regains's girlfriend, in need of money to buy drugs, planned that she or Regains's girlfriend would pose as a prostitute and pick up a customer, whereupon Regains would "jump out with the gun and rob them." She stated that defendant was present when the plan was made, but did not go with them. Before carrying out that plan, they stopped at a fast-food restaurant. They spotted Wells in the drive-through lane and decided to rob him instead. Regains was charged with murder, but it was later discovered that Regains was in the hospital when that offense occurred and, on the prosecutor's motion, the court dismissed the charges against Regains.

Defendant's counsel did cross-examine McElroy about that other offense at the trial in this case. However, defendant contends that his trial counsel was ineffective because he did not introduce evidence showing that Regains had an alibi and that the charges against him were dismissed, and did not introduce evidence showing that the initial plan for the August 2005 offense for which McElroy had given a false witness statement was the same plan carried out in the instant case. We disagree that trial counsel was ineffective in this respect.

Decisions regarding what evidence to present, whether to call witnesses, and whether to question or cross-examine witnesses are matters of trial strategy. *Rockey*, 237 Mich App at 76; *People v Hopson*, 178 Mich App 406, 412; 444 NW2d 167 (1989). Decisions regarding how to cross-examine and impeach witnesses are also matters of trial strategy. *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999); *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987). Ineffective assistance of counsel can be established by defense counsel's failure to present evidence or to call witnesses if the failure deprives the defendant of a substantial defense. *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013); *People v Julian*, 171 Mich App 153, 159; 429 NW2d 615 (1988). Counsel may also provide ineffective assistance "if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

Defendant does not identify a rule of evidence under which McElroy's witness statement would have been admissible at trial. Counsel could have called Regains to testify that he was charged with the August 2005 murder of Wells but did not commit the crime because he was in the hospital when the crime occurred, and that he had evidence to establish that claim. Likewise, counsel could have called the assistant prosecutor to testify that she had doubts about her ability to prove Regains's guilt, given records showing that he was in the hospital when the crime occurred, and that she thus elected to dismiss the charges against him. Counsel could have corroborated that testimony with documentary evidence. However, none of that would have been material to this case unless McElroy's witness statement was admissible at trial, which defendant has not established.

Even assuming that McElroy's witness statement was admissible, however, there was ample reason for counsel not to move for its admission. The fact that McElroy had falsely implicated Regains in a similar scheme permits an inference that she had falsely implicated defendant in the robbery of Clark. However, it could have had just the opposite effect, providing counsel a legitimate strategic reason for not introducing the evidence. See *People v Gioglio (On Remand)*, 296 Mich App 12, 22-23; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864 (2012). The original plan in both cases was to rob a prostitute's date to get money for drugs. McElroy testified that defendant had participated in that plan when Clark was robbed. Highlighting McElroy's witness statement could have prompted the jury to infer that McElroy had falsely implicated Regains in shooting Wells in order to protect defendant, and that defendant was the other participant in the plan to rob a prostitute's date, just as he was accused of having done in this case. Thus, it was reasonable strategy for counsel to forgo this avenue of impeachment.

Finally, defendant cannot show that he was prejudiced by counsel's error. The entire purpose of the evidence was to impeach McElroy's credibility. Counsel was able to elicit from McElroy testimony that she had falsely accused another person of being involved in the other

shooting and robbery, that she was a long-time user of crack cocaine, and that she had received a plea bargain in return for her testimony. Defense counsel also presented evidence that McElroy had written letters to defendant from jail despite her denial of having done so. Further, the jury may have wholly discredited McElroy's testimony and still convicted defendant based on Clark's testimony. Therefore, defense counsel was not ineffective for failing to seek the admission of further impeachment evidence related to the shooting of Wells, and the trial court did not abuse its discretion by denying this aspect of defendant's motion. *Frazier*, 478 Mich at 243.

## B. DEFENDANT'S ALIBI DEFENSE

Defendant also contends that trial counsel was ineffective for failing to investigate and call Regains and Robert Taylor to provide an alibi. The robbery and shooting of Clark occurred on November 7, 2005. Defendant contends that he was at home that night with Regains and Taylor. Although the crime had occurred almost 10 years earlier, both men specifically recalled being at defendant's house because it was the same night that a blackout occurred. Defendant presented other evidence from DTE Energy showing that the power outage had occurred on November 7, 2005.

Defense counsel has a duty to prepare, investigate, and present all "potentially viable" or "substantial" defenses. *People v Shahideh*, 277 Mich App 111, 118; 743 NW2d 233 (2007), rev'd on other grounds 482 Mich 1156 (2008). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990).

The trial court found that trial counsel did investigate Taylor as a potential alibi witness, but that Taylor had refused to cooperate or confirm defendant's alleged alibi. Those findings are supported by counsel's testimony. Because Taylor would not confirm that he could provide defendant with an alibi for the time of the offense, counsel was not ineffective for failing to call him as a witness. Further, defense counsel's decision not to subpoena Taylor as a witness when he could not verify what Taylor would say on the stand was sound trial strategy. *Rockey*, 237 Mich App at 76.

Trial counsel apparently did not investigate Regains as a potential alibi witness, but the trial court found that defendant was not prejudiced by the error because Regains could not actually account for defendant's whereabouts at the time of the offense. Regains testified that he was at home with defendant on the night of November 7, 2005. Regains specifically recalled the date because it was the same day as a power outage, which began sometime during the afternoon or evening hours of November 7, 2005, and Regains testified that he and defendant were at home from the time the power went out until the following morning. The documents from DTE Energy confirmed that there was a power outage in the area, including at defendant's address, on November 7, 2005, but did not indicate the time during which the outage occurred. The evidence thus supported that Regains was with defendant on the night of November 7-8, 2005, the night of the power outage. However, the offense occurred on the night of November 6-7, 2005. Clark testified that he picked up McElroy around 1:00 a.m. on November 7, 2005, such that the robbery had to have occurred shortly thereafter. That is supported by Clark's witness statement, which shows that Clark was questioned at the hospital between 3:00 and 4:00 a.m. on November 7, 2005. Regains did not testify to being with defendant on the night of November 6-

-4-

7, 2005, or even during the early morning hours of November 7, 2005. Because Regains' affidavit and testimony did not account for defendant's whereabouts at the time of the offense, defendant was not prejudiced by counsel's failure to investigate Regains as a potential alibi witness or to call him to testify at trial. Therefore, defense counsel did not deprive defendant of a substantial defense, and was not ineffective for failing to call Regains or Taylor as witnesses. *Kelly*, 186 Mich App at 526. The trial court did not abuse its discretion by denying this aspect of defendant's motion. *Frazier*, 478 Mich at 243.

## C. CLARK'S IDENTIFICATION TESTIMONY

Defendant also argues that Clark's in-court identification of defendant at the first trial was unnecessarily suggestive, and thus that trial counsel was ineffective for failing to move to suppress Clark's identification testimony at the second trial. We disagree. As noted, defendant was previously tried before the court without a jury. At the first trial, Clark identified defendant as the man who had shot and robbed him.

Counsel's decision whether to move to suppress identification testimony is a matter of trial strategy. *People v Wilki*, 132 Mich App 140, 145; 347 NW2d 735 (1984). A defense attorney's failure to move for the suppression of evidence may, under proper circumstances, constitute ineffective assistance of counsel. *People v Thomas*, 184 Mich App 480, 482; 459 NW2d 65 (1990). The failure to object to evidence can constitute ineffective assistance of counsel where the evidence was inadmissible and its introduction was so prejudicial that it could have affected the outcome of the case. *People v Ullah*, 216 Mich App 669, 685-686; 550 NW2d 568 (1996).

We note first the inaccuracy of defendant's contention that Clark first identified defendant at the first trial. To the contrary, Clark testified at the first trial that he had tentatively identified defendant at a corporeal lineup on January 28, 2006, stating, "The third one looks like the one that shot me, but he had a little more beard" at the time of the offense. Clark also testified that he identified defendant at the preliminary examination, and that is borne out by his preliminary examination testimony. Defendant has offered no argument that the preliminary examination identification was unduly suggestive. Moreover, even assuming that defendant was correct, he has not shown that Clark's in-court identification testimony at the first trial was inadmissible.

In *People v Kevin Williams*, 244 Mich App 533, 542-543; 624 NW2d 575 (2001), this Court stated:

> An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process. In order to challenge an identification on the basis of lack of due process, "a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." If the trial court finds the procedure was impermissibly suggestive, evidence concerning the identification is inadmissible at trial unless an independent basis for in-court identification can be established "that is untainted by the suggestive pretrial procedure." [Citations omitted.]

-5-

It has been held that an identification at a prior court proceeding may be so suggestive as to require suppression of identification testimony, *People v Solomon*, 47 Mich App 208, 217-221; 209 NW2d 257 (LESINSKI, C.J., dissenting), rev'd for the reasons stated by the dissent 391 Mich 767 (1974), although not all such confrontations are impermissibly suggestive. *People v Manuel Johnson*, 58 Mich App 347, 353; 227 NW2d 337 (1975). "Simply because an identification procedure is suggestive does not mean it is necessarily constitutionally defective." *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998). An in-court identification is not, in itself, "inherently suggestive since the witness knows that the defendant is the person charged with the offense and is the person the witness is asked to identify." *People v Michael Fuqua*, 146 Mich App 133, 143; 379 NW2d 396 (1985), overruled in part on other grounds by *People v Heflin*, 434 Mich 482, 498; 456 NW2d 10 (1990). There must be other factors that create the possibility of misidentification. *Fuqua*, 146 Mich App at 143-144. An in-court identification could be unduly suggestive if, for instance, the defendant is in prison garb, *Colon*, 233 Mich App at 305, or if there are several witnesses whose descriptions of the suspect differed substantially from the defendant's appearance, they were able to observe the defendant in court for some time, and they were able to communicate with one another after one identified the defendant for the first time in court. *Fuqua*, 146 Mich App at 144.

The record in this case does not indicate the amount of time during which Clark was able to observe defendant at the time of the robbery, or whether he gave the police a description of defendant before he identified him at the first trial; however, Clark did testify at the first trial that he saw defendant's face clearly during the robbery. As noted, Clark tentatively identified defendant at a lineup held two months after the robbery, identified him at the preliminary examination three months after the robbery, and identified him at the first trial seven months after the robbery. There is no evidence that the lineup was unduly suggestive and there is no evidence of any unusual circumstances such as those described in the above cases that would render either in-court identification unduly suggestive.

Defendant alternatively argues that even if Clark's identification testimony was admissible, trial counsel was nonetheless ineffective for "failing to introduce evidence of the massive blackout which engulfed the area that evening." Presumably, defendant views this evidence as potentially raising doubts about the availability of sufficient lighting during the attack for Clark to identify defendant as his attacker. However, as discussed earlier, the evidence produced at the hearing showed that there was a power outage on the night of November 7-8, 2005, but that the offense occurred before then, on the night of November 6-7, 2005. Thus, defense counsel's use of this evidence to challenge Clark's in-court identification would have been futile. Counsel is not ineffective for failing to raise futile objections. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). Therefore, the trial court did not abuse its discretion by denying this aspect of defendant's motion. *Frazier*, 478 Mich at 243.

## II. NEWLY DISCOVERED EVIDENCE

Defendant also argues that he is entitled to a new trial on the basis of newly discovered evidence, and that the trial court erred by denying his motion on this ground. Specifically, Myrick Buckner testified at the evidentiary hearing that he saw McElroy on November 11, 2005. According to Buckner, McElroy told him at that time that "we hit a lick about a week ago and it went ba[d]," meaning that someone had been shot. Buckner asked if she "and her man" had

committed the crime, and "she said no, it was somebody else," "the guy that she was hanging out that was in the bike club." Defendant did not learn about McElroy's statement to Buckner until he encountered Buckner in prison in 2015.

On a defendant's motion, the court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes the verdict has resulted in a miscarriage of justice. MCR 6.431(B). A new trial may be granted on the basis of newly discovered evidence. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). To obtain a new trial on the basis of newly discovered evidence, the defendant must show that (1) the evidence itself, and not just its materiality, was newly discovered; (2) the evidence was not cumulative; (3) the evidence would probably cause a different result upon retrial; and (4) the defendant could not, with reasonable diligence, have discovered and produced the evidence at trial. *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003). The trial court's ruling on a motion for a new trial is reviewed for an abuse of discretion, but its factual findings are reviewed for clear error. *Miller*, 482 Mich at 544.

Buckner's testimony was evidence of a prior inconsistent statement by McElroy; while she named defendant as her accomplice at trial, she previously had told Buckner that her accomplice was a man she knew from "the bike club." A witness's prior inconsistent statement constitutes hearsay, *People v Kohler*, 113 Mich App 594, 599; 318 NW2d 481 (1981), which is not admissible as substantive evidence unless the defendant can establish that it comes within a recognized exception to the hearsay rule. It is, however, admissible as impeachment evidence, provided that a proper foundation for its admission can be established. *Barnett v Hidalgo*, 478 Mich 151, 165; 732 NW2d 472 (2007); *People v Jenkins*, 450 Mich 249, 273; 537 NW2d 828 (1995); *Kohler*, 113 Mich App at 599. "The purpose of extrinsic impeachment evidence is to prove that a witness made a prior inconsistent statement—not to prove the contents of the statement." *Jenkins*, 450 Mich at 256. "[N]ewly discovered impeachment evidence ordinarily will not justify the grant of a new trial." *People v Grissom*, 492 Mich 296, 318; 821 NW2d 50 (2012). In rare cases, however, "newly discovered impeachment evidence satisfies *Cress* when (1) there is an exculpatory connection on a material matter between a witness's testimony at trial and the new evidence and (2) a different result is probable on retrial." *Id*. at 318-319 (footnote omitted).

Defendant has not offered any argument showing that Buckner's testimony regarding McElroy's statement to him was admissible as substantive evidence. Absent such a showing, it was admissible for impeachment purposes only. As the trial court found, because counsel had adequately impeached McElroy's credibility in several other ways, it is not reasonably likely that, had her credibility been impeached in yet another way, the outcome of the trial would have been different. Moreover, the jury could have rejected McElroy's testimony in its entirety and still convicted defendant based on Clark's testimony. Therefore, the trial court did not abuse its discretion in denying this aspect of defendant's motion. *Frazier*, 478 Mich at 243.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra

-7-