# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ROMIER DALVON PETERS,

      Defendant-Appellant.

UNPUBLISHED
September 21, 2017

No. 333785
Wayne Circuit Court
LC No. 15-007719-02-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

ROMIER DALVON PETERS,

      Defendant-Appellee.

No. 336697
Wayne Circuit Court
LC No. 15-007719-02-FC

---

Before: SAAD, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

This case arises out of defendant's involvement in the armed robbery of Thomas Pates that occurred around midnight on August 25, 2015, in Dearborn Heights, Michigan. In Docket No. 333785, defendant appeals as of right his jury-trial convictions of armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 84 months' to 20 years' imprisonment for his armed robbery conviction and two years' imprisonment for his felony-firearm conviction. In Docket No. 336697, the prosecution appeals by leave granted[1] the trial court's order granting defendant's motion for a new trial, which he filed while his claim of appeal in Docket No. 333785 was pending before this Court. For the reasons set forth in this opinion, we reverse the

---

[1] *People v Peters*, unpublished order of the Court of Appeals, entered February 6, 2017 (Docket No. 336697).

-1-

trial court's order granting defendant a new trial in Docket No. 336697 and affirm defendant's convictions and sentences in Docket No. 333785.

## I.  DOCKET NO. 336697

Several months after filing his claim of appeal in this Court in Docket No. 333785, defendant filed a motion for a new trial in the trial court, alleging that he received ineffective assistance of counsel because defense counsel denied him the opportunity to testify on his own behalf at trial. Defendant attached to his motion a handwritten affidavit in which he alleged that he told defense counsel repeatedly before and during trial that he wanted to testify, but his counsel responded by telling him "no" or "no, that's not good." Defendant argued that if the jury had heard his "side of the story," it would not have convicted him of the charged offenses.

The prosecution argued in response that defendant's affidavit did not meet the requirements of MCR 2.119(B) because defendant failed to explain in his affidavit what his testimony would have been at trial. Further, the prosecution argued that defendant failed to show that he did not acquiesce in defense counsel's trial strategy and even if he was able to overcome the presumption that defense counsel employed sound trial strategy, defendant failed to show that he was prejudiced because he also denied his involvement in the robbery during a police interrogation, a recording of which was played for the jury during trial.

Following a hearing, the trial court granted defendant's motion for a new trial, offering the following explanation:

> I reviewed the pleadings from both the defense and the prosecution and it does appear that there may be a conviction based on all of the evidence that was presented to the jury but I don't know how fair that verdict is if the Defendant is not given an opportunity to decide whether he wants to testify or not.
>
> I know that in many cases where the Court is the trier of fact that after the prosecution presents its case that the convictions look pretty apparent. And then after the defense is given an opportunity to present a case and does present a case a different light is put on the entire evidence. So that's the reason that I try in every case to give a Defendant notice of an opportunity to testify or not testify. And then I will know whether the defense wanted to testify or did not want to testify. In this case we don't have an indication, and this is also a problem that results from the Court not giving the Defendant that opportunity. We have an issue of whether the Defendant wanted to testify but his lawyer convinced him that he could not or should not and I don't feel comfortable with either due process or fairness in a situation like that.
>
> So I am going to grant the Defendant's motion, give him a new trial.

We review for an abuse of discretion a trial court's ruling on a motion for a new trial. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *People v Terrell*, 289 Mich App 553, 559; 797 NW2d 684 (2010). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012).

A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review a trial court's findings of fact for clear error and review questions of law de novo. *Id.* A finding of fact is clearly erroneous if we are definitely and firmly convinced that the trial court made a mistake. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014).

A trial court may "order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." MCR 6.431(B). MCR 6.431(B) directs a trial court to state its reasons for granting or denying a motion for a new trial either orally on the record or in a written ruling that is made part of the record. Considering the record before us, the trial court did not conclude that defense counsel provided ineffective assistance and did not conclude that the verdict resulted in a miscarriage of justice. Rather, the trial court granted defendant's motion for a new trial on the basis that it failed to determine on the record whether defendant wanted to testify. A trial court has no duty, however, to ascertain on the record whether a defendant intelligently and knowingly waived his right to testify. *People v Bell*, 209 Mich App 273, 277; 530 NW2d 167 (1995). The trial court therefore abused its discretion because it based its decision on an erroneous legal standard. See *Waterstone*, 296 Mich App at 132.

Moreover, even addressing the merits of defendant's claim of ineffective assistance of counsel underlying his motion, defendant was not entitled to a new trial. To establish a claim of ineffective assistance of counsel, a defendant must show both that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, absent counsel's unprofessional error, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). We presume that counsel provided effective assistance, and the defendant bears a heavy burden of proving otherwise. *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012). A defendant's burden includes the burden of establishing the factual predicate of his claim. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). We will not review counsel's performance with the benefit of hindsight, nor will we second-guess counsel on matters of trial strategy. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

A defendant's decision whether to testify "is a strategic decision best left to an accused and his counsel." *People v Martin*, 150 Mich App 630, 640; 389 NW2d 713 (1986). Although defense counsel must inform a defendant of the right to testify, the ultimate decision whether to testify remains with the defendant. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). When defense counsel advises a defendant not to testify at trial, we presume that counsel's advice is a matter of trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). A defendant waives the right to testify by intentionally relinquishing the right or by expressing satisfaction with defense counsel's advice not to testify. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Waiver may also be presumed if a defendant fails to

inform the trial court of a desire to testify when there is disagreement with counsel over whether the defendant should take the stand. *United States v Webber*, 208 F3d 545, 551 (CA 6, 2000).[2]

Accepting as true the assertion in defendant's affidavit that defense counsel repeatedly advised him not to testify at trial, this was a matter of trial strategy and we will not substitute our judgment for that of counsel regarding matters of trial strategy. See *Unger*, 278 Mich App at 242-243. Defendant's ineffective assistance claim could also be deemed waived because he failed to alert the trial court regarding any disagreement he had with defense counsel over his desire to testify. See *Webber*, 208 F3d at 551. Finally, even assuming defense counsel's performance fell below an objective standard of reasonableness, defendant cannot demonstrate prejudice because he offered no evidence below or on appeal setting forth what his testimony would have been at trial. Defendant thus failed to provide a factual basis for his ineffective assistance claim. See *Putman*, 309 Mich App at 248. In sum, the trial court abused its discretion by granting defendant's motion for a new trial on the basis that it failed to comply with a duty that does not exist under Michigan law, and, addressing the merits of defendant's ineffective assistance claim, defendant was not entitled to a new trial.

## II. DOCKET NO. 333785

Having concluded in Docket No. 336697 that the trial court abused its discretion by granting defendant's motion for a new trial, we must now address the issues raised by defendant in Docket No. 333785 otherwise challenging his convictions and sentences.

## A. EVIDENTIARY ERROR

Defendant first argues that the trial court abused its discretion by admitting evidence that the vehicle and handgun used during the robbery were stolen because this evidence was irrelevant. Defendant further argues that this evidence was unfairly prejudicial and deprived him of his constitutional right to a fair trial. We disagree.

We review for an abuse of discretion a trial court's ruling on the admissibility of evidence. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes or when the court makes an error of law. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo, and it is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *Bynum*, 496 Mich at 623. A trial court's decision regarding a close evidentiary question does not constitute an abuse of discretion. *People v Coy*, 258 Mich App 1, 13; 669 NW2d 831 (2003).

MRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or

---

[2] Although the decisions of lower federal courts are not binding on state courts, the decisions may be persuasive. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

less probable than it would be without the evidence." "Evidence is admissible if it is helpful in throwing light on any material point." *People v Powell*, 303 Mich App 271, 277; 842 NW2d 538 (2013) (quotation marks and citation omitted). Evidence need not be directed at an element of a crime or an applicable defense to be material, "but it must, at least, be in issue in the sense that it is within the range of litigated matters in controversy." *Id.* (quotation marks and citation omitted). All relevant evidence is admissible at trial unless the evidence is otherwise prohibited by the court rules or by the state or federal constitutions. MRE 402.

Defendant also argues that the trial court should have excluded evidence of the stolen nature of the vehicle and handgun because it was unfairly prejudicial. MRE 403 states that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Unfair prejudice refers to the tendency of evidence to adversely affect an objecting party's position by inserting considerations that are extraneous to the merits of the lawsuit, such as a jury's bias, anger, shock, or sympathy. *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

In this case, defendant was charged with armed robbery, felony-firearm, and carrying a concealed weapon (CCW). The CCW statute states that "[a] person shall not carry a pistol concealed . . . in a vehicle operated or occupied by the person . . . *without a license to carry the pistol as provided by law* and if licensed, shall not carry the pistol in a place or manner inconsistent with any restrictions upon such license." MCL 750.227(2) (emphasis added). An issue at trial was thus whether defendant was carrying the handgun in a manner consistent with the law. Evidence that the handgun was stolen would tend to show that the weapon was not being carried in a legal manner. Therefore, this evidence was relevant because it fell within the range of the litigated matters in controversy.

Although evidence is relevant, it may nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. Evidence that the handgun was stolen was highly relevant to the issue of whether defendant had a lawful right to carry the gun for purposes of the CCW statute. Although the evidence was certainly prejudicial to defendant, the possibility of *unfair* prejudice—such as possible improper character implications—did not, in our opinion, substantially outweigh the probative value of the evidence. In any event, a trial court's ruling on a close evidentiary matter does not constitute an abuse of discretion. *Coy*, 258 Mich App at 13. Defendant is not entitled to relief on this basis.

On the other hand, the stolen nature of the vehicle does not appear to have any consequence to the determination of the action and therefore should have been excluded on the basis that it was irrelevant.[3] Although we agree that the trial court should have excluded this

---

[3] Because we conclude that the trial court should have excluded this evidence on relevancy grounds, we need not address defendant's argument regarding MRE 403 as it pertains to this evidence because MRE 403 only applies to address circumstances in which evidence that is otherwise admissible must be excluded due to the danger that the evidence is unfairly prejudicial.

evidence, we presume that the erroneous admission of evidence is harmless and that reversal is unwarranted unless a defendant can demonstrate that, "after an examination of the entire evidence, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation marks omitted). "An error is deemed to have been outcome determinative if it undermined the reliability of the verdict." *People v Rodriguez*, 463 Mich 466, 474; 620 NW2d 13 (2000) (quotation marks and citation omitted).

In this case, significant independent evidence established defendant's guilt for the offenses of which he was convicted.[4] In our opinion, defendant has not shown that it was more probable than not that the erroneous admission of evidence that the vehicle was stolen affected the outcome of the trial or undermined the reliability of the jury's verdict. Defendant therefore has not shown that he is entitled to a new trial on this basis.

## B. LATE ENDORSEMENT OF WITNESSES

Defendant next argues that the trial court erred and denied him a fair trial by allowing the late endorsement of Kelly Tamayo and Dearborn Heights Police Detective Corey Smith. We review for an abuse of discretion a trial court's decision whether to allow the late endorsement of witnesses. *People v Callon*, 256 Mich App 312, 325-326; 662 NW2d 501 (2003).

Generally, the prosecution must inform defense counsel of all witnesses who might be called to testify at trial, which include res gestae witnesses and investigating law enforcement officers known to the prosecution. MCL 767.40a(1). To be timely, the prosecution must send the defendant or defense counsel its witness list at least 30 days before trial. MCL 767.40a(3). However, "[t]he prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties." MCL 767.40a(4). The delayed discovery of a witness not known to the prosecution or law enforcement officers may constitute good cause. *People v Burwick*, 450 Mich 281, 289; 537 NW2d 813 (1995). "Mere negligence of the prosecutor is not the type of egregious case for which the extreme sanction of precluding relevant evidence is reserved." *Callon*, 256 Mich App at 328. "Moreover, to establish that the trial court abused its discretion, [a] defendant must demonstrate that the court's ruling resulted in prejudice." *Id*.

---

[4] Pates testified that a man, whom he identified at trial as defendant, emptied his pockets and grabbed a lanyard from around his neck while a second man held him at gunpoint. Kelly Tamayo testified that defendant returned to the vehicle they had been riding in with a lanyard that he did not have before he exited the vehicle a few minutes earlier. The police found a lanyard with Pates's identification information in the back seat of the police squad car where defendant was placed following his arrest. Pates also described his assailant as a man wearing a white t-shirt, and Dearborn Heights Police Officer Shaun Pawlus testified that he pulled a man wearing a white t-shirt, whom he identified at trial as defendant, from the vehicle that had fled police pursuit.

Defendant's trial was scheduled to begin on March 16, 2016, but the trial court adjourned trial until the following day due to an issue involving the potential panel of jurors. On March 17, 2016, defense counsel moved to exclude Tamayo and Smith from testifying because the prosecution failed to endorse either witness on its witness list. The prosecutor explained that he had not endorsed Tamayo because he had difficulty contacting her and he had not endorsed Smith due to an oversight when filling out the witness list. The prosecutor explained that he had contacted defense counsel to inform him about the witnesses and his intention to call them at trial. The trial court noted that defense counsel had actual notice of Tamayo's and Smith's involvement in the case and therefore allowed the prosecution to call the witnesses at trial.

Under the circumstances, we are not convinced that the trial court abused its discretion by allowing the prosecution to add Tamayo and Smith as witnesses and to call them at trial. Allowing the late endorsement of witnesses is not an abuse of discretion when the defense knew about the witnesses, had an opportunity to cross-examine them, did not request a continuance, and endured no unfair prejudice as a result of the late endorsement. See *Callon*, 256 Mich App at 326. The record reveals that defendant's trial was ultimately adjourned until April 18, 2016, so defense counsel knew of the prosecution's intent to call Tamayo and Smith at trial for approximately three weeks before trial began. Defense counsel had the opportunity to prepare and cross-examine the witnesses and did not request a continuance. Finally, the defense was not unfairly prejudiced by the late endorsement of these witnesses because defense counsel has known about Tamayo's and Smith's involvement from the outset of the case.

Moreover, the mere negligence of the prosecution in failing to properly endorse a witness is not a sufficient basis to exclude relevant testimony. *Callon*, 256 Mich App at 328. Tamayo's testimony was highly relevant to the case because she was with defendant on the night in question and was a passenger in the vehicle during the armed robbery. Smith's testimony was also highly relevant because he was the officer in charge of the case and interrogated defendant following his arrest. Therefore, the trial court did not abuse its discretion by allowing these witnesses to testify at trial, and defendant was not deprived of a fair trial.

## C. UNDULY SUGGESTIVE IN-COURT IDENTIFICATION

Defendant argues that the trial court denied him a fair trial by allowing Pates to identify defendant in court because the identification was unduly suggestive and lacked an independent basis. Generally, we review for clear error a trial court's decision to admit identification evidence. *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004). In this case, however, defendant did not move in the trial court to suppress the identification and did not object to the identification during trial so the issue is unpreserved. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). We therefore review this issue to determine whether plain error occurred that affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To avoid forfeiture under the plain error rule, the defendant must demonstrate that an error occurred, the error was plain, and the plain error affected substantial rights. *People v Buie*, 285 Mich App 401, 407; 775 NW2d 817 (2009). "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *Putman*, 309 Mich App at 243.

A defendant is denied due process if a procedure used to identify him as the perpetrator of an offense is unnecessarily suggestive or conducive to irreparable misidentification. *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). "Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do." *Perry v New Hampshire*, 565 US 228, 244; 132 S Ct 716; 181 L Ed 2d 694 (2012). However, "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Id*. at 245. Courts consider the following factors to determine whether an independent basis exists for the admission of an in-court identification:

> (1) prior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any prelineup identification lineup of another person as the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant. [*People v Davis*, 241 Mich App 697, 702-703; 617 NW2d 381 (2000).]

Defendant argues that Pates's in-court identification was unduly suggestive because Pates spoke with another witness before testifying and, during the conversation, learned defendant's name. Defendant also argues that the in-court identification was unduly suggestive because defendant was seated at defense counsel's table indicating that he was "obviously the defendant in the case." Although every in-court identification involves some element of suggestion, defendant has not shown that Pates's in-court identification was tainted by improper state conduct, nor has he shown that there was a significant likelihood that he was misidentified by Pates.[5]

Even if we were to conclude that the circumstances surrounding Pates's in-court identification were unduly suggestive, his identification was still admissible because there was an independent basis for the identification. Although Pates did not have a prior relationship with or knowledge of defendant, he had ample opportunity to observe defendant during the robbery. Pates testified that he saw defendant and his accomplices while they were in the vehicle and while they were robbing him. Pates explained that the street was lit well enough to see each suspect. During the robbery, defendant emptied Pates's pockets and grabbed a lanyard from

---

[5] In *People v Fuqua*, 146 Mich App 133, 144; 379 NW2d 396 (1985), overruled in part on other grounds by *People v Heflin*, 434 Mich 482, 498; 456 NW2d 10 (1990), this Court concluded that an in-court identification was unduly suggestive when a witness was able to communicate with another witness after the first witness had already identified the defendant for the first time in court. Although Pates admitted in this case that he spoke with another witness before testifying, there is no evidence that Pates spoke with the other witness about any of defendant's identifying features. Instead, Pates said he spoke with the other witness about defendant's name, which he also said he already knew because it was listed on the subpoena he received.

around Pates's neck while an accomplice held Pates at gunpoint. We can reasonably infer from this evidence that defendant was in very close proximity to Pates during the robbery.

Although Pates was unable to identify defendant during a pretrial live identification lineup procedure, Pates described defendant as having a "[w]hite T-Shirt, shoulder length dreads, about the same height but lighter complexion" as the other assailant who was holding the gun. Nothing in the record indicates that Pates's initial description of defendant was inaccurate. In fact, Dearborn Heights Police Officer Shaun Pawlus testified that he pulled a man wearing a white t-shirt out of the back seat of the vehicle after it crashed and that the man was later identified as defendant. Tamayo also testified that, after the vehicle crashed, defendant was the only individual who stayed in the vehicle with her. Considering these circumstances, defendant has not shown that the trial court plainly erred by admitting Pates's in-court identification, nor has he shown that he was prejudiced by the alleged error. Accordingly, defendant was not denied his right to a fair trial on this basis.

## D. PROSECUTORIAL ERROR

Defendant next argues that he was denied a fair trial when the prosecutor improperly vouched for Tamayo's credibility during his closing argument. Specifically, defendant asserts that the prosecutor erred by arguing during closing that "[Tamayo] is telling the truth in this instance. She puts the gun in [defendant's] hand. She says he was coming back with the lanyard that he was eventually found with." "Generally, a claim of prosecutorial misconduct is a constitutional issue that is reviewed de novo, but a trial court's factual findings are reviewed for clear error." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). However, defendant did not object to the alleged instance of prosecutorial error and did not request a curative instruction from the trial court, so we review this unpreserved issue for plain error affecting substantial rights. *Id.*

The test of prosecutorial error is whether a defendant was denied a fair and impartial trial. *Id.* at 134. The defendant bears the burden of establishing that such an error occurred and that the error resulted in a miscarriage of justice. *Id.* When reviewing a claim of prosecutorial error, we consider the alleged erroneous conduct on a case-by-case basis and examine the prosecutor's remarks in the context of the entire case. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). A prosecutor may not vouch for the credibility of a witness by suggesting that he or she has some special knowledge that the witness is testifying truthfully. *People v Roscoe*, 303 Mich App 633, 649; 846 NW2d 402 (2014). However, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). "An otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001) (quotation marks, citation, and brackets omitted).

Reviewing the prosecutor's challenged remarks in context, we are not persuaded that any error occurred. During defense counsel's closing argument, he asserted the following:

You saw [Tamayo] today or yesterday take the stand and say different things. First only two people got out of the car. Once we pressed her about it, well, actually, there [were] three people that got out of the car.

Now, again, she told you that although she loves her boyfriend, she knew he was done. She knew that he had stolen property, meaning the car and the gun, she knew that he fled from police, she knew that after crashing he ran from police. There is no question about that. But she has a decision to make. Okay. The friend who I have known for a long time . . . or [defendant] who she kind of knows from Facebook but never hung out with. What did she do?

\* \* \*

[Tamayo], we know that she was arrested, she was involved, she wasn't charged and now she comes here and just minimizes what she did.

During his rebuttal argument, the prosecutor then asserted the following in response:

Now looking at [Tamayo], defense counsel wants you to believe that she is completely incredible. What motivation does she have to lie to you at this point? All of the other cases as you've heard, that she's aware of, have been resolved. There is no benefit to her in coming forward and telling you all this information. She's not getting a deal, no one else in this is getting some sort of a deal based on her testimony. She is coming into court to be able to explain to you what happened.

She is telling the truth in this instance. She puts the gun in the Defendant's hand. She says he was coming back with the lanyard that he was eventually found with. Ladies and gentlemen, it doesn't make any sense as to why she would come in here and make this up at this point in the game. She has absolutely nothing to gain from that.

Viewed in context, the prosecutor's remarks regarding the veracity of Tamayo's testimony were a direct response to defense counsel's argument during closing, which suggested that Tamayo's testimony lacked trustworthiness. Although a prosecutor may not generally vouch for the credibility of a witness, we are not convinced that the prosecutor's remarks in this instance amounted to plain error because he was responding to an argument set forth by defense counsel.

And even assuming plain error occurred, defendant cannot establish that he was prejudiced by the prosecutor's remarks. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). The trial court instructed the jury that the lawyers' remarks were not evidence, and defendant has not presented any evidence that the jury did not accept and follow this instruction. Therefore, defendant has not shown that any alleged error arising from the prosecutor's remarks affected his substantial rights or denied him a fair trial.

## E.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that defense counsel provided ineffective assistance by failing to object to Pates's unduly suggestive in-court identification and to the prosecutor's remarks during closing argument concerning Tamayo's credibility.  As already discussed, however, Pates's in-court identification was not unduly suggestive and was supported by an independent basis, and the prosecutor's remarks did not amount to prosecutorial error.  Trial counsel cannot be deemed ineffective for failing to raise a meritless objection at trial.  *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014).  Therefore, defendant has not established that he is entitled to a new trial on the basis of ineffective assistance of counsel.

## F.  SENTENCING CHALLENGES

Finally, defendant argues that he is entitled to resentencing because his sentence was unreasonable and was based on numerous scoring errors.  In particular, defendant argues that the trial court erred, given the record, by assessing 15 points for offense variable (OV) 10 (exploitation of a vulnerable victim) and 10 points for OV 19 (interference with the administration of justice).  Defendant also argues that his sentence constitutes an unreasonable departure sentence.  We disagree.

## 1.  SCORING ERRORS

We review for clear error a trial court's factual findings used to score the sentencing guidelines; such facts must be supported by a preponderance of the evidence.  *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).  A factual finding is clearly erroneous if we are definitely and firmly convinced that an error occurred.  *Id*.  "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo."  *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

"When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination."  *McChester*, 310 Mich App at 358.  The trial court may rely on the record evidence and reasonable inferences arising from that evidence to assess points for an offense variable.  *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012).  A defendant is entitled to resentencing if the trial court clearly erred by finding that a preponderance of the evidence supported assessing points under the OVs or otherwise erred by applying the facts to the OVs and the scoring error altered the defendant's minimum sentencing range.  *People v Biddles*, 316 Mich App 148, 156; 896 NW2d 461 (2016).

## a.  OV 10

MCL 777.40 sets forth OV 10, which addresses exploitation of a vulnerable victim and provides that the court may assess 15 points if "[p]redatory conduct was involved."  MCL 777.40(1)(a).  The statute defines "predatory conduct" to mean "preoffense conduct directed at a victim . . . for the primary purpose of victimization."  MCL 777.40(3)(a).  "The timing and location of an offense—waiting until a victim is alone and isolated—is evidence of predatory conduct."  *People v Ackah-Essien*, 311 Mich App 13, 37; 874 NW2d 172 (2015).  To assess

points under OV 10, "only those forms of preoffense conduct that are commonly understood as being predatory in nature, e.g., lying in wait and stalking, [should be considered] as opposed to purely opportunistic criminal conduct or preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011) (quotation marks and citation omitted). Points should be assessed under OV 10 only if the victim had a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation. *Cannon*, 481 Mich at 158.

Defendant argues that the trial court erred by assessing 15 points under OV 10 because the record does not contain evidence that he engaged in "predatory conduct" or that Pates was vulnerable and that defendant exploited his vulnerability. We disagree. The record reveals that defendant and his accomplices approached Pates while they were in a vehicle with the headlights off and while Pates was walking alone late at night. Pates testified that he began to feel uneasy because he believed defendant and his accomplices were stalking him. Pates continued walking, but within a short time period, defendant and an accomplice ran up behind Pates, forced him into an alley behind a "closed down hamburger station," and robbed him at gunpoint.

Based on this evidence, it was reasonable for the trial court to infer that defendant and his accomplices were lying in wait with the intention of targeting Pates and creating an opportunity to victimize him. Defendant and his accomplices approached Pates as a group in a vehicle without lights on while it was dark outside and while Pates was alone and isolated and thus susceptible to injury and restraint. Defendant argues that he was not driving and had no control over the actions of the driver, but Pates testified that, after the driver of the vehicle asked him for a lighter, the driver conferred with the other occupants of the car, including defendant, and shortly thereafter the driver and defendant robbed Pates. Sufficient evidence thus established that defendant was involved in the culpable preoffense conduct and the trial court properly assessed 15 points under OV 10.

b. OV 19

MCL 777.49 sets forth OV 19, which addresses interference with the administration of justice and states that the trial court may assess 10 points if the offender "interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense," but a court may also consider an offender's conduct after the completion of the sentencing offense. *People v Smith*, 318 Mich App 281, 286; 897 NW2d 743 (2016) (quotation marks and citation omitted).

Defendant argues that there was insufficient evidence to support the assessment of 10 points under OV 19 because he did not evade arrest and he cooperated with the police. However, defendant ignores the evidence presented at sentencing that showed he attempted to prevent Tamayo from testifying at his trial. At sentencing, the prosecutor explained that Tamayo turned over a screen shot of a text message she received from one of defendant's acquaintances, Shakur Gilliam, indicating that Tamayo should not come to court. The prosecutor explained that

he had also listened to several jail telephone calls between defendant and Gilliam, which suggested Gilliam was attempting to prevent Tamayo from coming to court. Based on this evidence, the trial court could reasonably conclude that defendant attempted to obstruct the administration of justice because he attempted to prevent a key witness from testifying as to his involvement in the crime. Therefore, the trial court properly assessed 10 points under OV 19.

## 2. REASONABLENESS OF SENTENCE

Defendant next argues that he is entitled to resentencing because the trial court imposed an unreasonable departure sentence. Based on the properly scored OVs, defendant's recommended minimum sentencing guidelines range was 42 to 70 months' imprisonment. The trial court, however, sentenced defendant to a minimum of 84 months' imprisonment, an upward departure of 14 months. We conclude that this departure sentence was reasonable under the circumstances.

In *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015), our Supreme Court severed MCL 769.34(2) to the extent that it made the sentencing guidelines mandatory. However, sentencing courts must still consult the applicable sentencing guidelines range and take it into account when imposing a sentence on a defendant. *Id.* at 391. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Id.* at 392. In *People v Steanhouse*, ___ Mich ___, ___; ___ NW2d ___ (2017) (Docket Nos.152671, 152849, 152871, 152872, 152873, 152946, 152947, and 152948); slip op at 3, our Supreme Court held that "the proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " In *Milbourn*, 435 Mich at 657, our Supreme Court noted that "departures are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing . . . ." The *Milbourn* Court also provided the following guidance for appellate courts reviewing a departure sentence:

> Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. [*Id.* at 659-660.]

Other factors considered by Michigan courts under the *Milbourn* proportionality standard include "(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as . . . the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015), affirmed in relevant part, reversed in part ___ Mich ___ (2017) (citations omitted).

In this case, the trial court imposed the departure sentence after noting the seriousness of the offense and the presence of several other factors that were not addressed by the sentencing guidelines. The trial court explained that defendant participated in multiple instances of misconduct while he was in custody for the instant offenses, which included stealing food from another inmate, blatantly ignoring commands from prison personnel, using vulgar language toward prison personnel, and engaging in multiple fights with other inmates. Although defendant stated that he was remorseful of his actions, the trial judge was unconvinced and noted that she had the opportunity to observe defendant's behavior in her court room. The trial court pointed out that the crime at issue in this case was a crime against a person, not property, and that defendant had participated in 13 instances of prison misconduct within less than a year, which the court described as unusual. Ultimately, the trial court imposed an extra month over defendant's minimum sentencing range for every instance of prison misconduct defendant had incurred while he was in custody.

In our opinion, the trial court did not abuse its discretion by imposing the departure sentence that it did because the sentence was proportionate to the seriousness of the circumstances surrounding the offense and the offender, particularly when considering defendant's multiple instances of misconduct while in custody. Accordingly, defendant is not entitled to resentencing on the basis that his sentence was unreasonable.

### III. CONCLUSION

We reverse the trial court's order granting defendant's motion for a new trial in Docket No. 336697 and affirm defendant's convictions and sentences in Docket No. 333785.

/s/ Henry William Saad
/s/ Deborah A. Servitto
/s/ Michael F. Gadola